[Civil No. 3642.   Filed February 10, 1936.]

[54 Pac. (2d) 268.]

JEAN E. GOODWIN, Appellant, v. MILTON E. GOODWIN, Appellee.

Mr. H. O. Juliani, for Appellant.

Mr. H. M. VanDenburgh, for Appellee.

LOCKWOOD, C. J.—Jean E. Goodwin, hereinafter called plaintiff, brought suit against Milton E. Goodwin, hereinafter called defendant, to recover under a certain contract. Defendant demurred to the complaint on the ground the contract set forth therein was, on its face, void as a matter of public policy, answered setting up more fully the reason why he contended it was void, and, by way of cross-complaint, asked that it be canceled. Plaintiff demurred to the cross-complaint. The court sustained the demurrer to the complaint, and overruled that to the cross-complaint, and in its judgment held the contract declared on to be null and void, whereupon this appeal was taken.

Under the situation, as above stated, it is necessary that we set forth the substance of the pleadings and the contract involved. The complaint alleges that the parties were husband and wife, and that on the 15th day of April, 1932, they executed an agreement in the following language:

"Due to Domestic Difficulties We, Mrs. Jean E. Goodwin and Milton Goodwin do hereby agree to a separation with the following provisions: I Jean Goodwin agree to take up my residence elsewhere and to accept six hundred dollars ($600.00) and twenty five dollars per month, First payment $400 cash and monthly payment starting between sixth and tenth of May of twenty five dollars, this monthly payment to continue as long as I am out of his home and to be discontinued if I should remarry, I agree to give him a divorce if he so wishes with this agreement still in effect. If I find that I am in the family way there shall be another agreement and this shall be null and void.

"I Milton Goodwin agree to pay Mrs. Jean E. Goodwin $25.00 on the 6th or 10th of each month, I also agree to pay Mrs. Goodwin $600 to be applied by her on a mortgage due on one house and two lots owned by said Mrs. Goodwin in Tucson, Arizona (descrip-

tion not available) same to be considered as my equity in said property, $400 to be paid with the execution of this agreement and balance remitted not later than December 31st, 1932.

"Dated at Buckeye this fifteenth day of April, 1932."

The agreement was executed in contemplation of immediate separation, and, pursuant thereto, the parties did immediately separate and ever since have lived apart. About a year later, defendant instituted an action for divorce against plaintiff, which she contested, and he did not prevail in the action, for the reason he failed to prove a cause for divorce against her. There is a further allegation of partial payment, under the agreement, and then of a failure to continue with the payments and a prayer for the amount due at the time of the filing of the complaint. The defendant demurred on the ground that the agreement showed, on its face, it was executed by him in consideration of the promise of plaintiff to give the defendant a divorce, and was therefore against public policy, and void. He then answered and cross-complained, alleging that the marriage between the parties was procured by fraud on the part of plaintiff, and that the agreement above set forth was signed by him solely on the consideration that plaintiff would give him a divorce, and that he would not otherwise have signed it, asking that it be canceled. To the cross-complaint plaintiff demurred.

The rulings of the court sustaining the demurrer to the complaint and overruling the demurrer to the cross-complaint were, in effect, a holding that the contract, on its face, showed that it was void as a matter of public policy.

In the case of *Roden* v. *Roden,* 29 Ariz. 398, 242 Pac. 337, 339, we had before us a separation agree-

ment which was claimed to be contrary to public policy. Therein we stated:

"It is doubtless true that husband and wife cannot make an agreement waiving or limiting this right of support before the initiation, or during the continuance, of the matrimonial community. Nothing, however, is commoner under our modern practice than such contracts when a separation is imminent or after it has occurred, and if they are not obtained by fraud or undue influence, they are generally upheld. 13 C. J. 465."

▮▮▮▮▮ Since the agreement and the complaint show that the parties were contemplating separation at the time it was made, and separated immediately thereafter, it would be valid and binding were it not for the words contained therein: "I agree to give him a divorce if he so wishes with this agreement still in effect." It is urged by defendant that this shows the agreement was signed by him upon the consideration that the plaintiff would not oppose him if he filed a suit for divorce, and that such a consideration is void as against public policy, and therefore voids the entire agreement. Counsel for both plaintiff and defendant have cited to us many cases discussing the validity of separation agreements. Each case, of course, was determined on its own facts, but we think that the general principle running through all of them is the same, and may be stated as follows: If a settlement of property rights is made in *contemplation* of the possibility of a divorce between the parties, where just cause for divorce exists, so that, in substance, the only controverted issue which could arise would be a settlement of the property rights, such a settlement made in advance of actual divorce proceeding is valid, and, if obtained without fraud or undue influence, is binding upon the parties. But, if no cause for divorce exists at the time, or if,

though a cause may exist, the party entitled to the divorce does not desire or intend at the time to exercise his or her rights, an agreement for a division of property or future support *conditioned* upon the exercising by one spouse or the other of the right to divorce or a collusive agreement that they will collaborate in the obtaining of a divorce, when no real cause exists therefor, is contrary to public policy, and void *ab initio*.

Since the case was, in effect, determined by the sustaining of the demurrer to plaintiff's complaint, the question is whether or not the agreement shows on its face, as a matter of law, that it was *conditioned* upon one of the parties obtaining a divorce, whether cause actually then existed for divorce, or whether collusive collaboration was planned or whether it shows upon its face that it was merely in *contemplation* of the possibility of a divorce action and not conditioned thereon, or was ambiguous as to which meaning the parties had.

We have examined the instrument carefully. It is evidently drawn by a layman, and we feel that it is not so explicit in its terms that we would be justified in saying, as a matter of law, whether the consideration for the payments set forth was an agreement by plaintiff that she would permit defendant to obtain a divorce, if he wished, or that the true consideration was a settlement of support on account of an immediate separation then agreed upon, and the provision in regard to divorce was a mere afterthought. Such being the case, we think the court should have overruled the demurrers to both the complaint and the cross-complaint and taken evidence thereon to determine, if possible, what the true reason and consideration for the agreement was.

The judgment of the superior court is reversed, and the case remanded, with instructions to overrule the demurrer to the plaintiff's complaint, and for such further proceeding as may be advisable under the views expressed in this opinion.

McALISTER and ROSS, JJ., concur.