227 P.2d 214

**SMITH v. SMITH.**

No. 5343.

Supreme Court of Arizona.

Feb. 5, 1951.

W. H. Chester, of Phoenix, for appellant.

Milton L. Ollerton, of Phoenix, for appellee.

UDALL, Chief Justice.

Marie L. Smith, plaintiff-appellee, on February 17, 1949, filed a complaint for divorce against her husband, Thad G. Smith, defendant-appellant, alleging cruelty and asking for a divorce and a division of their community property. The parties will hereafter be designated as they were in the lower court. The defendant by his answer denied any wrongdoing on his part, and set forth a property settlement agreement theretofore entered into by the parties. By counterclaim he alleged acts of cruelty on the part of plaintiff, prayed for a dissolution of the marriage and an equitable division of their community property by enforcement of said agreement. After a trial on the merits to the court, sitting without a jury, judgment was entered on August 22, 1949, in favor of plaintiff; the bonds of matrimony were dissolved; no alimony was allowed; and the court, not deeming itself bound by the property settlement agreement, made such disposition of the community property as it deemed proper. After denial of defendant's motion for a new trial, this appeal was taken both from the judgment and said order.

Defendant's assignments of error are based on his contention that the trial court, by its decree awarding the plaintiff the 2½ acre "home tract" (located at 4650 North 18th Street in Phoenix), divested him of his

separate property, contrary to the provisions of sec. 27–805, A.C.A. 1939. In support of this contention defendant maintains (1) that this "home tract" was paid for with his separate funds, and (2) that the trial court was bound to give effect to the property settlement agreement, the terms of which provided, "Second party (defendant) shall have as his separate property the equity of the parties hereto (in the home tract here in question)."

To properly understand the issues presented a brief recitation of facts is necessary. The parties were married at Lordsburg, New Mexico on November 14, 1947, and there were no children as the issue thereof. This marital venture was the second for this 41-year-old plaintiff, and the third for defendant, his second marriage having been dissolved just six weeks previously. It was not long until differences arose between the parties. On May 28, 1948, the property settlement agreement herein relied upon was entered into, and upon the same date plaintiff commenced an action for divorce. On June 5, 1948, on plaintiff's motion, her complaint for divorce was dismissed by the superior court and the parties resumed cohabitation. Two weeks before the instant divorce action was commenced defendant filed for record with the county recorder the property agreement previously entered into in May of the preceding year and a week later the plaintiff saw fit to make, execute and record a declaration of homestead upon the home tract.

At the time of trial defendant's financial affairs were in such shape that he was in the bankruptcy court.

We are convinced that neither the husband's eleventh hour recordation of the property agreement nor the wife's belated declaration of homestead have, inter sese, any bearing upon the legal questions presented. The rights of creditors or of other third parties are in nowise involved in this appeal.

We shall first consider defendant's claim that the home tract was his separate property—having been paid for with his separate funds—and being such that the trial court could not divest him of title thereto because of sec. 27–805, supra, as interpreted by several decisions of this court, the latest being Armstrong v. Armstrong, 71 Ariz. 275, 226 P.2d 168. As against defendant's evidence that the home tract was his separate property, we have the contradictory testimony of plaintiff that the house was wholly paid for out of their community earnings. No point would be gained by setting out in detail this conflicting testimony as it would only unduly extend the opinion. The deed conveying title to the home property was admittedly received during coverture and it named both husband and wife as grantees. This fact alone raised a presumption that the home was community property and the burden was then on defendant to overcome that presumption. This could be done only by "strong", "satisfactory", "convincing", "clear and cogent"

or "nearly conclusive evidence". See Porter v. Porter, 67 Ariz. 273, 195 P.2d 132. Defendant wholly failed to supply such evidence, and in fact on cross-examination these revealing statements were made by him:

"Q. When you bought this 18th Street property, the home property, as we speak of it now, the deed was made to both you and Mrs. Smith. You knew it was being prepared that way, and accepted it that way? A. I knew it had been prepared that way, yes.

"Q. And you accepted it that way? A. I did at that time, yes.

"Q. You always considered that Mrs. Smith had a community interest in that property? A. *Up until the time we got our property settlement.*" (Emp. sup.)

In a situation of this kind it is our duty as an appellate court to construe the evidence in a light most favorable to a sustaining of the judgment of the lower court. McDonald v. Cluff, 68 Ariz. 369, 206 P.2d 730. When the evidence is thus considered there is no merit to defendant's first contention.

It is apparent therefore that if defendant is to prevail it must be upon the second ground, i. e., that the court in dividing the community property, was bound to give effect to the property settlement agreement which by its terms made the home tract his separate property free and clear of any equities of his wife.

Ordinarily the jurisdiction of the court over community property rights of husband and wife can be exercised only when one of them has invoked it in a divorce proceeding against the other, Long v. Stratton, 50 Ariz. 427, 72 P.2d 939; and the court's jurisdiction over the community property is incidental to the divorce proceedings. Long v. Stratton, supra; secs. 27–805, 27–810, A.C.A. 1939. It likewise is the law that a property settlement agreement entered into by the parties in contemplation of divorce is valid, and in the absence of fraud or undue influence is binding upon the parties. Goodwin v. Goodwin, 47 Ariz. 157, 54 P.2d 268. But an agreement entered into and conditioned upon one of the parties securing a divorce is contrary to public policy and void. Goodwin v. Goodwin, supra. When a husband and wife settle their property rights by agreement, if the settlement is fair and equitable, free from fraud and undue influence, the court normally will approve it, Roden v. Roden, 29 Ariz. 398, 242 P. 337. But the court is not bound to do so, Long v. Stratton, supra. For a dissertation on the legal effect of such agreements, see 27 C.J.S., Divorce, § 301.

As a general rule where husband and wife have made a separation agreement and thereafter become reconciled and resume cohabitation, the effect is to annul the agreement. Annos. 40 A.L.R. 1227, 85 A.L.R. 420. However, this rule is generally limited to agreements which provide merely for the parties living separately and for the

payment of a stated sum for separate maintenance. "As to other provisions, it is said that whether a reconciliation operates to annul the agreement depends on the intention of the parties as shown by their acts." 40 A.L.R., supra, at 1231; 85 A.L.R., supra, at 421.

This court has previously stated that the cardinal rule to be followed in determining the effect of a settlement of community property rights by the parties is to ascertain the intention of the parties as to what interests, rights or property they intended to pass thereby, and to carry out that intention as nearly as possible. Schwartz v. Durham, 52 Ariz. 256, 80 P.2d 453.

In the instant case it is highly significant that the agreement was obviously made by the parties in contemplation of divorce, plaintiff having filed her first suit for divorce on the same day that the agreement was made. Their reconciliation and resumption of cohabitation eight days later are acts inconsistent with an intention to follow through on the terms of their property settlement, as no steps were thereafter taken by either of them to carry out the terms of the agreement. The agreement on its face shows that it was not to be self-executing—no words of transfer or of conveyance are contained therein. At best it was intended to form the basis for a court decree making a division of the property of the parties at the time of the *first divorce action* had a decree been obtained. That the parties did not consider the agreement as having any validity after the first action was dismissed is also evidenced by the fact that the agreement was not recorded until the happening of the events that led to the *present action* and after the parties had again separated.

The parties invoked the jurisdiction of the court over the community property by placing in issue the property settlement agreement and its effect upon the home tract. Having done so, the court could have approved the same by merging the agreement in the decree, thereby giving it efficacy, but it was not bound to do so, Long v. Stratton, supra. We hold under this record that the court was at liberty to treat the agreement as having been annulled by the parties and thereafter to make such disposition of the property as to it seemed fair and equitable under the circumstances. Fowler v. Fowler, 119 Okl. 95, 248 P. 629.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concurring.