# STELLA CRAVENS, Appellant, v. CLURIE BOYD CRAVENS, Appellee. —392 S.W.(2d) 825.

Middle Section.  February 26, 1965.

Certiorari Denied by Supreme Court June 21, 1965.

Neal & Craven, Jamestown, for appellant.

Maddux, Cameron & Jared, Cookeville, for appellee.

I

SHRIVER, J.  The issue in this case is which of the two parties is entitled to appointment as administrator of the estate of Hendricks C. Cravens, who died intestate in Fentress County on May 12, 1964. The appellant, Stella Cravens, is the widow, while the appellee, Clurie Boyd Cravens, is a son of the deceased.

On May 16, 1964, the son obtained letters of administration in the County Court of Fentress County. This was done without the widow's prior knowledge or approval. On May 19th, 1964 Mrs. Cravens filed a petition in the County Court asking that she be appointed and that the appointment of Clurie Boyd Cravens be revoked.

The County Court sustained her petition to the extent of appointing her co-administrator, but declined to revoke the letters previously issued to the son. From this judgment both parties appealed to the Circuit Court.

On the trial in the Circuit Court, as in the County Court, Clurie Boyd Cravens insisted that the widow had relinquished her rights of inheritance in her husband's estate by virtue of a separation agreement executed by the husband and wife on November 19, 1957. This, therefore, became the main issue for determination.

It was stipulated in the Circuit Court that the parties were equally fit and suitable to administer the estate and that the case be decided on the issue of whether Mrs. Cravens had waived her right to a distributive share therein and, thus, was not entitled to letters of administration.

The Trial Judge ruled adversely to the widow, holding that the separation agreement barred her rights of inheritance and an appeal was then prayed, granted and perfected to this Court.

## II

The separation agreement, a copy of which is made exhibit to the answer of defendant and also made Exhibit to the cross-examination of Mrs. Cravens, comprises eight type-written pages. The pertinent provisions may be summarized as follows:

It was made and entered into by and between H. C. Cravens, a resident of Fentress County, Tennessee, party of the first part, and Stella Cravens, also a resident of Fentress County, party of the second part.

It recites that the parties are husband and wife and, by mutual agreement, henceforth intend to live apart from each other; two children have been born of the marriage; and, "Whereas, the parties have agreed on a settlement of all property rights, * * * Now, therefore, for and in consideration of a full and complete settlement and agreement between the parties hereto, and of the covenants and agreements herein set out * * * the parties agree as follows, to wit:"

(1) The agreement acknowledges receipt by second party of the sum of $10,000.00 in cash and other good and

valuable considerations, paid by the party of the first part.

(2) Party of the first part delivers and conveys to the party of the second part any and all furniture, household goods, effects and personal property in their dwelling house; and party of the first part agrees to vacate said dwelling and give the party of the second part complete control of same; the dwelling is conveyed to the second party for and during her natural life or until she remarries.

(3) It is recited that the party of the first part has given to party of the second part a farm containing 200 acres, more or less, known as the Henry Polston Farm, "Title thereto already being vested in her, and she acknowledges this gift as a part of this settlement." Party of second part also acknowledges receipt of $3,-750.00 in notes endorsed and assigned to her by party of the first part and secured by purchase money lien on real estate heretofore sold by the party of the first part.

(4) Party of the first part agrees to pay party of the second part the sum of $161.00 a month on or before the tenth of each month for the support and maintenance of their two minor children.

(5) Visitation rights are given to the party of the first part as to the children.

(6) A further stipulation is made as to their living separately and as to right of control of the farm where the dwelling house is located and access to same by first party.

(7) Custody and control of the two children is agreed to be given to party of the second part.

(8) Party of the first part to continue to have control of the farm on which the dwelling is located and control and ownership of all machinery, equipment, farming tools, livestock, etc.

(9) Party of the first part not to be liable for any debts, obligations, claims, etc. of the second party.

(10) Party of the second part agrees not to contract any debt, or debts, and charge them to party of the first part.

(11) "In consideration of the payment of the sum of money hereinabove set out, paid by party of the first part to party of the second part, and of the other property received by party of the second part, she agrees that she will and she does hereby accept same in full and complete settlement and release of all claims and demands of every nature against party of the first part, including all liability now or at any time hereafter existing or accruing on account of support, maintenance, alimony, dower, or rights in lieu thereof, incident to the marriage relation and she intends and hereby releases party of the first part entirely from all personal claims and demands and from any that may hereafter attach, arising in any manner from the relation of husband and wife, and from all claims or interests whatsoever in any property, whether real, personal or mixed, which party of the first part may now own or may at any time hereafter hold or acquire any interest whatsoever in, and it is mutually understood that this settlement is a total and complete release of party of the first part by party of the second part of all matters and charges whatsoever, and after this settlement is fully carried out nothing more will be required of party of the first part."

(12) Party of the second part agrees to sign, acknowledge, and deliver deeds, releases, and/or waivers of homestead and dower rights in and to any property owned by party of the first part that he may desire to sell or dispose of but this provision not to affect the property rights and interests granted and given party of the second part in this settlement.

The document was signed by the parties and dated November 19th, 1957, and notarized.

### III

As hereinabove stated, the cause was heard before the County Judge of Fentress County who entered an order making both complainant and defendant co-administrators of the estate.

On appeal to the Circuit Court the cause came on to be heard before the Honorable William I. Davis, Jr., Judge of Circuit Court of Fentress County, without the intervention of a jury, on the 13th of August 1964 on the pleadings and the entire record, including depositions and oral testimony of the parties and witnesses duly sworn and examined in open court, and, after argument of counsel, the Court took the cause under advisement until September 15, 1964 when he entered a decree incorporating therein findings of fact and conclusions of law as follows:

"The evidence establishes the following facts: in 1957 petitioner Stella Cravens, for reasons best known to herself, voluntarily decided to cease cohabiting with her husband H. C. Cravens. Petitioner and Mr. Cravens appeared together in the office of Robert F. Turner, a competent and ethical lawyer, and discussed in detail and agreed upon the terms of an agreement later

executed by them on November 19, 1957. Mr. Cravens desired to continue to live with the petitioner but she was adamant in her decision. The proposed agreement was fully understood by petitioner including the suggested fact that she was accepting less in material values by its terms than she would otherwise be entitled to as the wife and or widow of Mr. Cravens. The terms and provisions of the agreement was reduced to type and a few days later Mr. Cravens, accompanied by Mrs. Bertram, Deputy Clerk & Master and notary public, went to petitioner's home where petitioner read the agreement as typed, signed and acknowledged it with full knowledge and understanding of its contents, provisions, meaning, import, effect, intent, significance and consequence. Petitioner received all of the consideration due her under the terms and provisions of said agreement, accepting same with the complete knowledge as above stated. Said agreement is dated Nov. 19, 1957 and filed as exhibit 1 to the cross-examination of the petitioner. No question was ever made by petitioner as to said agreement until after the death of Mr. Cravens May 16, 1964.

It is believed petitioner by executing said agreement intended to and did waive and release any and all claims she had or might have against her husband H. C. Cravens and his estate; that said agreement was supported by lawful and valuable consideration and there has been no failure of consideration; that said agreement was voluntarily made and entered into by petitioner and was free from fraud, deceit, coercion, undue influence and misrepresentation; that under the circumstances then existing the agreement was fair and equitable; that petitioner by executing said agreement and accepting all the benefits therein provided inten-

tionally, knowingly and effectively surrendered and waived all right she had or might have thereafter as the wife and or widow of H. C. Cravens; that petitioner now has no right to or interest in said estate.

Relatives, who would inherit nothing in the estate have no standing in court to be appointed administrator or to remove an administrator already appointed, where they have no interest in the estate as next of kin or distributees, Lakins vs. Isley, 200 Tenn. 353 [292 S.W. (2d) 389].

It is believed the petition of Stella Cravens should be dismissed and the judgment of the County Court appointing her as co-administrator should be reversed at cost of petitioner.

Proper judgment should be prepared for entry on the minutes including provisions for appeal. Thirty days appeal bond and sixty days bill of exceptions.

This 15 day of September, 1964.

/s/ Wm. I. Davis, Jr.
Judge    ''

IV

Conclusions of Law and Fact

It is insisted by counsel for the appellant, Mrs. Cravens, that, under Section 30-109 T.C.A., she is entitled to preference in the granting of letters of administration. Said section provides as follows:

''When any person shall die intestate in this state, administration shall be granted to the widow of such person, if she make application for the same. For want of such application upon the part of the widow, the administration shall be granted to the next of kin, if such next of kin apply therefor.''

Counsel for Mrs. Cravens also assert that in Fitzgerald v. Smith, 112 Tenn. 176, 78 S.W. 1050, it is held that the statute prescribing the preference to whom administration shall be granted is mandatory where the applicants are equally fit and suitable. It is stipulated in the case at bar that the parties are equally fit and suitable, and, therefore, the case turns on the effect of the separation agreement.

The record shows that Hendricks C. Cravens and Stella Cravens were married November 28, 1932, and three children were born of the union but that Mr. Cravens had five children by a previous marriage, one of whom is the appellee, Clurie Boyd Cravens.

It was testified by Mrs. Cravens that, at the time of his death, Mr. H. C. Cravens was the owner of real and personal property valued at approximately one half million dollars and that most of this estate was accumulated after their marriage and through the joint efforts of herself and her husband.

It is argued by counsel for the appellant that the context in which the word ''dower'' appears in the settlement agreement shows that the word was intended to denote ''dower inchoate'' rather than ''dower consummate'', especially in view of Section 12 where the wife obligates herself to join in any deeds of conveyance or other transfers that the husband may make to any property owned by him, and that this provision is inconsistent with an estate waiver. It is further argued that the general statements contained in the separation agreement do not constitute an estate waiver.

Counsel quote from the work entitled ''Separation Agreements and Ante-nuptial Contracts'', Annotated, by

Alexander Lindey, wherein it is said that while waivers are not regarded with disfavor, by the weight of authority there must be a specific, clear-cut, unequivocal waiver so as to bar the interest of a spouse in the other's estate, and such waiver will not be spelled out from the mere existence of a separation agreement nor will it be inferred from general language, and that such waiver requires an actual intent to relinquish a known right, which intent must be clearly shown. To this effect is the statement of the law in Re Vogt's Estate, 10 Ill.App.(2d) 333, 134 N.E.(2d) 816.

Also cited is the statement in 26A C.J.S. Descent and Distribution sec. 58, pages 637 and 638, to the effect that such agreement to be effective as depriving surviving spouse of rights of inheritance, it is essential that it manifest a clear and unmistakable intention to barter away such rights, and that it be supported by a valuable consideration. It must be freely and fairly made, and be just and equitable in its provisions and be free from fraud, deceit and overreaching.

Counsel for appellant cite numerous cases from other jurisdictions in which the foregoing principles are announced. Also the cases of Carroll v. Springer, 14 Tenn. App. 195, and Matthews v. Matthews, 24 Tenn.App. 589, 148 S.W.(2d) 3, are cited and sought to be distinguished.

■ It is to be noted that the Circuit Judge, after hearing the proof in this case, much of which was by oral testimony, and, particularly, that of Mrs. Cravens, held that the appellant executed the separation agreement "voluntarily and free from fraud, deceit, coercion, undue influence and misrepresentation" and that she had "full knowledge and understanding of its contents, provisions,

meaning, import, effect, intent, significance and consequence."

After reviewing the record this Court concurs in the findings of fact and conclusions of law of the trial Judge. It is apparent that the Judge, after seeing and observing the appellant on the witness stand, and after also seeing and hearing the other witnesses, concluded that it was not true that Mrs. Cravens entered into the separation agreement without full knowledge of its contents and its effect. He evidently concluded that her decision to contest the right of the son, Clurie Boyd Cravens, to act as administrator and to claim a part of the estate as the surviving widow of H. C. Cravens came as an after thought, as did her claim that she did not receive the consideration by way of cash and property recited in the separation agreement under which she proceeded from November 1957, when it was entered into, until the death of Mr. Cravens May 12, 1964, without protest or claim on her part.

It is contended by counsel for appellee that our authorities, including DeFord v. National Life & Acc. Ins. Co., 182 Tenn. 255, 185 S.W.(2d) 617; Lockhart v. Moore, 25 Tenn.App. 456, 159 S.W.(2d) 438, and the recent case of Beasley v. Metropolitan Life Ins. Co., 190 Tenn. 227, 229 S.W.(2d) 146, support appellee's position and that Mrs. Cravens was under the duty to learn the contents of the written contract before she signed it and, where one is deemed not to be the victim of fraud and fails to read a contract or otherwise learn its contents, he or she signs it at his or her peril and is estopped to deny his or her obligation thereunder. We agree with this proposition.

The trial Judge held that, inasmuch as Mrs. Cravens had relinquished her right to share in the estate of Mr. Cravens by signing the separation agreement, she was not entitled to serve as administratrix of the estate.

We concur in this conclusion.

It was held in Lakins v. Isley, 200 Tenn. 353, 292 S.W. (2d) 389, that, under the statute in question here, the Legislature meant to prefer members of the family in granting of administration, because they are the ones who inherit the estate and are closer to the deceased by blood ties and by right of property than are creditors or strangers. And the Court held that a mother who brought an action for dismissal of a former husband of her deceased daughter as administrator, but who would take no part of the personal assets of the daughter's estate nor any part of possible recovery arising out of an automobile accident in which the daughter was killed, and who made no charge that the husband was not a proper and suitable person to be administrator, was without right to have the husband removed as administrator of the estate of the daughter.

In quoting from Tudor v. Southern Trust Co., 193 Tenn. 331, 334, 246 S.W.(2d) 33, 35, the Court further said:

"The right to administer the estate of an intestate follows the right to the property comprising said estate and reference to the statutes of distribution will determine who is entitled to administer under the preference given the next of kin."

Further quoting from Sizer's Prichard Law of Wills and Executors, 2 Ed. p. 578, it was stated:

"But it is an established principle that the right to administer the effects of an intestate follows the right to the property in them; hence, a reference to the statutes of distribution will, in most cases, determine who is entitled to letters of administration."

Also quoting from 33 C.J.S. Executors and Administrators sec. 31, p. 922, the Court said:

"Ordinarily one not entitled to share in the estate is not entitled to letters of administration, and interested parties are the only ones who can demand an administration of the estate."

We are of opinion that the trial Judge reached the right conclusions as to the facts and the applicable law, hence, the assignments of error are overruled and the judgment of the trial Court is affirmed with costs.

Humphreys and Puryear, JJ., concur.