430 P.2d 937

In the Matter of the ESTATE of Nancy Ann HENRY, Deceased.

Virginia Mary KNOP, Appellant,

v.

David A. HENRY, as Administrator of the Estate of Nancy Ann Henry, Deceased, Appellee.

No. 2 CA–CIV 323.

Court of Appeals of Arizona.

Aug. 4, 1967.

184

R. Lamar Couser, Tucson, for appellant.

Knez & Glatz, by Nick Knez, Tucson, for appellee.

MOLLOY, Judge.

The superior court, in Pima county, in the matter of the Estate of Nancy Ann Henry, granted letters of administration to David A. Henry, surviving spouse of the intestate. The superior court refused to grant letters of administration to the intestate's natural mother, Virginia Mary Knop. From this order denying the petition for letters of administration, Virginia Mary Knop appeals.

Virginia Mary Knop, hereinafter referred to as appellant, contends that the trial court erred in granting letters of administration to David A. Henry, hereinafter referred to as appellee, because appellee had relinquished any right that he may have had as a surviving spouse to ad-

minister the estate of the intestate by entering into a "Settlement and Separation Agreement" with the intestate.

The appellee and the intestate, after having been married just over five years, separated from each other, and during the separation, which lasted about three weeks, the intestate commenced an action for divorce. Before filing her petition for divorce, appellee and the intestate entered into an agreement marked "Settlement and Separation Agreement." After the signing of this agreement, the husband filed in the divorce case a counterclaim asking that the separation agreement be set aside. Before this litigation could be disposed of, the wife, along with the only offspring of this marriage, perished in a fire.

The "Settlement and Separation Agreement" provided among other things that the intestate-wife would have the care, custody and control of the minor child, subject to reasonable visitation rights on the part of the appellee; that the husband would pay the wife the sum of $60 per week for the support of the minor child; that in dividing the property of the parties, the husband was to take as his sole and separate property a house and lot located in Tucson, Arizona, a 1965 Mustang automobile, and all his clothing, jewelry and personal effects; that the wife should take all of the household furnishings and appliances in the house, a 1959 Hillman automobile, and all her clothing, jewelry and effects; and, that the wife would release and relinquish all right, claim and demand of every kind to support, maintenance and alimony from the appellee.

The "Settlement and Separation Agreement," admitted in evidence below, further provided:

"Each of the parties hereto waives all right to the estate of the other left at his or her death and quit claims all right to share in the estate of the other by the laws of succession, releases and waives all right to inherit under any will of the other, and waives all right to the estate

or any interest in the estate of the other for family allowances and by way of inheritance, and from the date of this agreement the parties shall have the rights of single persons and maintain the relationship of such toward each other."

Appellee maintains that the trial court did not err in appointing him administrator in that he is entitled, regardless of any waiver contained in the separation agreement, to serve as the administrator of the estate of the intestate under the provisions of A.R.S. § 14–417, which reads, in part, as follows:

"A. Administration of the estate of a person dying intestate *shall be granted* to one or more of the following persons, and in the following order:

"1. The surviving husband or wife, or some competent person whom he or she may request to have appointed.

"2. The children.

"3. The father or mother."

(Emphasis added)

Appellee further contends that the "Settlement and Separation Agreement" is invalid because the agreement had been signed by him without the advice of counsel, because he did not understand its contents, and because of the conduct of the intestate in cohabiting with another man—conduct which he was unaware of at the time he entered into the separation agreement.

At the hearing on the petition for letters, there was no evidence introduced as to any of these contentions, other than that the husband was not represented by counsel at the time of the execution of the property settlement agreement and that he was "quite distressed over the situation" at the time. It was established at the hearing that the husband was an "engineer" with eight years working knowledge and two years of university studies.

 In this jurisdiction a property settlement agreement entered into by the parties in contemplation of divorce is valid, and, in the absence of fraud or undue in-

fluence, is binding upon the parties. Smith v. Smith, 71 Ariz. 315, 227 P.2d 214 (1951); Goodwin v. Goodwin, 47 Ariz. 157, 54 P.2d 268 (1936). When a husband and wife settle their property rights by agreement, if the settlement is fair and equitable, free from fraud and undue influence, the court normally will approve the agreement. Roden v. Roden, 29 Ariz. 398, 242 P. 337 (1926). We know of no law suggesting that because a husband is not represented by counsel, a property settlement signed by him is voidable. See Atkinson v. Atkinson, 2 Ariz.App. 1, 405 P.2d 919 (1965). The fact that he was "distressed" does not give grounds to avoid his contract. See Carrillo v. Murray & Layne Co., 25 Ariz. 303, 216 P. 689 (1923). In this jurisdiction a person who is competent is held as a matter of law to know the contents of an agreement he signs. Apolito v. Johnson, 3 Ariz.App. 232, 413 P.2d 291 (1966).

▉▉▉ The agreement on its face does not seem to be harsh or oppressive. Absent any evidence showing fraud or duress, we see no legal basis to support a holding that the property settlement agreement was not binding on the parties, see Anno.—Separation Agreement—Coercion, 5 A.L.R. 823, and hold that the order below cannot be supported on a setting aside of this agreement.

▉▉▉ The question now presented is whether the appellee, by relinquishing completely all claims in the estate of his wife, relinquished his statutory preference to serve as administrator of her estate. Our statutes refer to the preference of serving as an administrator as being a "right."[1] For general law recognizing this preference to be a right, see 21 Am.Jur. Execu-

tors and Administrators §§ 58, 59 and 60, pp. 406–08; 33 C.J.S. Executors and Administrators § 31, p. 921. Most rights may be waived, 56 Am.Jur. Waiver § 4, p. 105; 92 C.J.S. Waiver, p. 1041, at 1066. If the right of the husband were waived or relinquished, then we believe that the "right" of the mother, if qualified to be appointed, would have to be recognized by the court. 33 C.J.S. Executors and Administrators § 47 c, p. 954; 21 Am.Jur. Executors and Administrators § 99, p. 430; and see In re Mortenson's Estate, 83 Ariz. 87, 316 P.2d 1106 (1957).

The objective in granting letters of administration is eruditely stated in Johnson v. Johnson, 15 R.I. 109, 23 A. 106 (1885), as follows:

"In granting administration the primary object is the interest of the estate; hence courts have deemed it their duty to place the administration in the hands of the person most likely to convert the property to the best advantage of those beneficially interested. Other things being equal, that person will be he who is entitled as distributee, in whole or in part, to the residue of the estate after the claims of creditors have been satisfied, because of his interest. It is therefore an established principle governing courts exercising probate jurisdiction that the *right to the administration of the effects of an intestate follows the property in them.* In re Goods of Gill, 1 Hagg. Ecc. 341, 342; Wetdrill v. Wright, 2 Phillim. Ecc. 243, 248; Ellmaker's Estate, 4 Watts, 34, 38; Sweezey v. Willis, 1 Bradf Sur. 495–497; Hall v. Thayer, 105 Mass. 219, 224; Thornton v. Winston, 4 Leigh, 153, 160, 162; Clay v.

1. See A.R.S. § 14–414:
 "Any person interested * * * may assert his *rights to administration* * * *." (Emphasis added)
 "§ 14–420.
 "Letters of administration shall be granted to the applicant although it appears there are other persons having better *rights to the administration* * * *." (Emphasis added)
 "§ 14–422.

 "When letters of administration have been granted, the surviving spouse, a child, father, brother or sister of the intestate may assert a *prior right* and *obtain letters of administration,* * * *." (Emphasis added)
 "§ 14–423.
 * * * * *
 "B. * * * If the *right of applicant to letters* is established, * * *." (Emphasis added)

Jackson, T. U. P. Charlt. 71, 73; Leverett v. Dismukes, 10 Ga. 98, 99. In 1 Will. Ex'rs 436, the author remarks that both in the common-law and spiritual courts it has always been considered that the object of the statutes of administration, 31 Edw. III, c. 11, and 21 Hen. VIII, c. 5, is to give the management of the property to the person who has the beneficial interest in it; and *the inclination to effectuate this object has been so strong that in some instances not only the practice of the ecclesiastical court, but the decisions of the judges delegate, have not scrupled to disregard the express words of the statute; * * *.*" (Emphasis added) 23 A. at 107.

The following authority is to the same general effect: 21 Am.Jur. Executors and Administrators § 60, p. 407; 33 C.J.S. Executors and Administrators § 31, p. 922; In re Bartz' Estate, 207 Wis. 639, 242 N.W. 171 (1932); In re Davis' Estate, 106 Cal. 453, 39 P. 756 (1895); and, In re Ellis' Estate, 43 Ind.App. 620, 88 N.E. 341, 342 (1909).

In Cravens v. Cravens, 54 Tenn.App. 487, 392 S.W.2d 825 (1965), cert. den. by the Supreme Court of Tennessee June 21, 1965, the Court of Appeals of Tennessee, faced with a similar statute [2] as A.R.S. § 14–417, and with a similar argument as raised by appellee here, held that the surviving spouse, who relinquished her right to share in the estate of her former husband, was not entitled to serve as administratrix of the estate. The Tennessee court in reaching this conclusion declared:

"* * * under the statute in question here, the Legislature meant to prefer members of the family in granting of administration, because they are the ones who inherit the estate and are closer to the deceased by blood ties and by right of property than are creditors or strangers." 392 S.W.2d at 830.

Supportive authority may be found at 21 Am.Jur. Executors and Administrators § 63, p. 409; and see 33 C.J.S. Executors and Administrators § 35, p. 926, at 927; 35 A.L.R. Anno.—Separation Agreement—Inheritance, 1505, at 1511; 81 A.L.R. Anno.—Separation Agreement—Inheritance, 693, at 695; and 34 A.L.R.2d Anno.: Separation Agreement—Surviving Spouse 1020, § 6, p. 1039.

The agreement in question completely severed the husband from any interest in the wife's estate and accordingly it would be a complete frustration of the legislative intent to permit him to insist on being appointed administrator. The technical statutory wording must yield when the clear legislative intent will be frustrated. City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49 (1966). We hold that the court erred in appointing the appellee as administrator.

During oral argument in this court, appellee argued that the issues in this case had been rendered moot because the estate had already been distributed to appellee, as surviving spouse, under a "Decree of Distribution" granted in the superior court in Pima county. Appellee, in support of his argument, presented to each judge and to opposing counsel copies of such decree. Appellant's counsel professed utter ignorance as to the existence of such a decree and objected to the consideration thereof by this court. After oral argument and while this appeal was under consideration, appellant submitted a letter to this court enclosing copies of a motion, made in the superior court, to "Vacate and Set Aside Decree of Distribution." Appellant contends that this "letter" evinces to the court

2. Section 30–109 T.C.A., which reads, in part, as follows:
 "When the person shall die intestate in this state, administration *shall* be granted to the widow of such person, if she make application for the same. For want of such application upon the part of the widow, the administration shall be granted to the next of kin, * * *." (Emphasis added)

"* * * that the appeal is in no wise moot."

General law is to the effect an appellate court will not settle moot and abstract questions, and, when a reviewing court has notice of facts showing that the issues on appeal are moot, it will dismiss the appeal. 5 Am.Jur.2d Appeal and Error § 913, p. 345; 5 C.J.S. Appeal & Error § 1354(1), p. 404; Bernstein, "The Disposition of Civil Appeals in the Supreme Court," 5 Ariz.L.Rev. 175–192 (Spring 1964). However, the procedural posture here forecloses a consideration of the question of whether this appeal is moot.

We will not take judicial notice of particular legal proceedings transacted in another court. 9 Wigmore, Evidence § 2579, p. 569, at 570 (3d ed.1940); cf. State v. Branham, 4 Ariz.App. 185, 418 P.2d 615 (1966); Patch v. Buros, 2 Ariz.App. 585, 410 P.2d 703 (1966). Merely because a document may physically be in the possession of the clerk of this court does not make the document a part of the record on appeal. See Taylor v. American National Insurance Company, 1 Ariz.App. 574, 405 P.2d 826 (1965).

The usual manner of obtaining a dismissal of an appeal is by motion made in the court to which the appeal is taken. 5 Am.Jur.2d Appeal and Error § 916, p. 347; Bernstein, "The Disposition of Civil Appeals in the Supreme Court," supra. The motion to dismiss should be accompanied by motion papers containing in themselves so much of the record in the appellate court as is necessary to enable the court to act understandably; and, if dismissal is sought for reasons not of record, then affidavits should be submitted setting forth the pertinent facts, 5 Am.Jur. 2d Appeal and Error § 925, p. 353, at 354.

The words of Justice Bernstein of the Supreme Court of Arizona, in his article "The Disposition of Civil Appeals in the Supreme Court," supra, appropriately presents the purpose for observing formalities when moving the appellate courts to dismiss:

"If counsel believes that grounds exist for dismissing an appeal, he should assume the affirmative burden of demonstrating that to the Court by motion. A motion to dismiss must be presented in writing. Rules 4 and 7 of the Rules of the Supreme Court [17 A.R.S.] prescribe in detail the form of the motion, the number of copies, the notation of service, the time for the response, as well as the other formal requirements. These requirements should be followed explicitly. *They insure that the parties have a full opportunity to present to the Court, and that the Court has before it, all applicable facts and arguments.* A motion which has such final and serious consequences as one to dismiss an appeal should not be presented or decided perfunctorily." (Emphasis added)

Bernstein, "The Disposition of Civil Appeals in the Supreme Court." 5 Ariz.L. Rev. at 176–77.

The method used by appellee to raise the issue of mootness certainly does not meet the above standards. The appellant was not given an opportunity to address herself to this issue in this court. Nor does appellant's letter and enclosure meet the standards of properly calling the attention of this court to matters occurring in the superior court. We, therefore, decide the instant appeal as if these matters, extraneous to our record, had not been attempted to be called to our attention.

Having determined that the order of appointment was erroneous, and that this error is not necessarily moot, we must determine an appropriate appellate order to return this matter to the superior court. Clearly, under the authority herein cited, the appellant is entitled to have the order appointing appellee revoked and letters issued to herself, providing there are any further acts of administration to be performed. Whether the activities of the appellee as administrator during the pendency

of this appeal were efficacious has not been properly briefed to this court, and we decline to pass thereon. We leave to the lower court the problems inherent in the fact that no effort was made to stay the proceedings below while this appeal was pending.[3]

The issuance of a writ of mandate herein will constitute a direction to the court below to so proceed. Reversed with directions; costs will be charged against the appellee.

HATHAWAY, C. J., and KRUCKER, J., concur.

3. General law will be found at 33 C.J.S. Executors and Administrators § 87, p. 1030; 21 Am.Jur. Executors and Administrators § 112, p. 437; 14 A.L.R. Anno. — Administration — Ineligible — Status and Acts 619.