481 P.2d 298

**Henry C. WICK, III, Appellant and Cross-Appellee,**

**v.**

**Jane Kent WICK, Appellee and Cross-Appellant.**

**Nos. 1 CA–CIV 764, 1 CA–CIV 765.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 25, 1971.

Rehearing Denied March 29, 1971.

Review Granted May 4, 1971.

contract action concerning a related property settlement agreement. The questions raised relate to the enforceability of the property settlement agreement and the validity of the property distribution and support provisions set forth in the divorce judgment.

On June 4, 1965, Henry C. Wick, III filed an action for divorce in which he also requested that provision be made for the custody of the parties' eleven year old son and that the Court determine the separate and community property of the parties and make appropriate division of the community property. Jane Kent Wick filed an answer, and also a counterclaim seeking a divorce from the husband, a determination and division of community property, alimony, and custody of and support for the parties' son.

On May 18, 1966, almost one year after the filing of the divorce action and while it was still pending, the parties entered into a "Separation and Property Settlement Agreement" which provided for the division of their community property, the support, care and custody of their minor son, and the support and maintenance of the wife. However, the provisions of this separation and property settlement agreement were breached almost immediately by the husband, and one month later, the wife filed a contract action, separate and distinct from the pending divorce action, seeking to collect the accrued amounts due thereunder for support and maintenance.[1] The husband in his amended answer filed in the contract action admitted the signing of the May 18, 1966 Separation and Property Settlement Agreement, but claimed that the agreement was invalid because of alleged duress, undue influence and unfair persuasion exercised by the wife in obtaining his signature thereto. In the first count of a counterclaim filed with his an-

Max M. Klass, Phoenix, for appellant and cross-appellee.

Favour & Quail, by John M. Favour, Prescott, for appellee and cross-appellant.

HAIRE, Judge.

This matter involves two appeals—one from a divorce action and the other from a

---

1. By amendment to conform to the evidence, the complaint in the contract action was amended after trial so as to include amounts for support and maintenance accrued under the agreement to the date of judgment in the sum of $24,632.64, and also $10,000.00 for an attorney's fee obligation alleged to be due at that time under the agreement.

swer, he sought a judicial declaration of the agreement's invalidity because of this alleged "duress, undue influence and unfair persuasion", and in the second count sought to have the agreement reformed in the event the court found the agreement to be valid and subsisting.

Upon stipulation of the parties the divorce and contract actions were consolidated for trial, and after trial on the merits to the court, on July 21, 1967 the trial court entered separate judgments in the two actions.

The judgment in the contract action was for the plaintiff-wife for the full amount sought for support and maintenance in her amended complaint, $24,632.64 " * * * as and for the amounts payable and unpaid for the support and maintenance of the plaintiff and the minor child of the parties under the agreement." On the husband's counterclaim plaintiff-wife was granted judgment against the defendant-husband on both Count I (relating to the alleged invalidity of the agreement based upon duress, undue influence and unfair persuasion) and Count II (relating to the request by the husband for reformation).

The judgment in the divorce action granted a divorce to the defendant-wife on her counterclaim, and granted custody of the minor son to her. On the amended counterclaim which the wife had filed seeking approval and confirmation of the May 16, 1966 Separation and Property Settlement Agreement, the court held:

"3. The Separation and Property Settlement Agreement of the parties dated as of the effective date of May 16, 1966, and executed by the parties on the 18th of May, 1966, was not entered into by the parties as a result of duress, but that said agreement does not represent a fair and equitable distribution of the community property of the parties, and for that reason the Court refuses to merge said Separation and Property Settlement Agreement into its decree."

The court then proceeded to include detailed provisions in the divorce judgment relating to the disposition of the community property and to the support of the wife, some of which were directly contrary to the agreement of the parties as manifested in the separation and property settlement agreement dated May 18, 1966.[2]

2. The provisions of the agreement and the corresponding provisions of the judgment which materially differed therefrom are as follows:

"1. By paragraph I of the Separation and Property Settlement Agreement the parties had agreed that 'wife shall have and own as her sole and separate property free and clear of right, title or interest on the part of husband or of the community' Lot 16 Mummy Mountain Estates. By paragraph 5 D of the judgment, the Mummy Mountain Estates lot was awarded to husband as his sole and separate property.

"2. By paragraph X of the Separation and Property Settlement Agreement the parties had agreed that:

'Husband agrees to pay to Wife the sum of Two thousand seven hundred dollars ($2,700.00) per month beginning with the 16th day of the month next succeeding the date of the execution of this agreement for the support and maintenance of the wife during her natural life and upon her death such payment shall cease. This obligation shall be binding upon and be a charge upon the estate of the husband and upon his personal representatives in the event that he shall predecease the Wife. It is further agreed that in the event of the death of Husband, David Wick and Constance Ashley will take over the same position as Husband and run it (Judson School) in the same manner as Husband has always done. The obligation of the Husband herein contained shall not be affected by any subsequent change in the marital status of the parties, including the divorce of the parties and the remarriage of either or both, except that after eleven (11) years, if wife is remarried, her payments shall be reduced to Fifteen Hundred Dollars ($1,500.00) a month.'

"By paragraph 8 of the judgment, the court ordered:

'Plaintiff pay to Defendant as and for alimony the sum of Two Thousand Three Hundred ($2,300.00) Dollars

The wife has appealed from that portion of the divorce judgment which refused to incorporate the property settlement agreement of the parties into the divorce decree and which distributed property and support contrary to the terms of the agreement (paragraphs 3, 5 D and 8 thereof). The husband has appealed from the judgment for the wife entered in the contract action and the wife has cross-appealed in the contract action from the failure of the trial court to give judgment in her favor for $10,000.00 as and for attorney's fees which the wife contends the husband was obligated to pay pursuant to the terms of the agreement.[3]

Upon this state of the record, both Court and counsel are presented with a confusing and perplexing situation. By its judgment entered upon the wife's complaint in the *contract* action, the trial court has found that the May 18, 1966 agreement between the parties was valid and enforceable. By granting judgment for the wife and against the husband on both counts of his counterclaim in the *contract* action, the trial court has ruled that there was no duress, undue influence or unfair persuasion exercised by the wife, and further that there was no basis for reformation of the agreement. On the other hand, by its judgment in the *divorce* action, the trial court has found that the agreement did not represent " * * * a fair and equitable distribution of the community property * * * and for that reason * * * refuses to merge said [agreement] into its decree." If the trial court had stopped at this point, perhaps no serious conflict would have been presented. However, subsequent paragraphs of the divorce decree, as mentioned previously, provided for

division of the community property and for the wife's support and maintenance in a manner inconsistent with some of the provisions of the agreement. The result is that the parties are left with an apparently valid, enforceable agreement with provisions hopelessly at variance with the divorce action judgment rendered by the trial court. Both parties to the appeals before this Court recognize the necessity of resolution of these conflicts in order that the support and property rights may be finally resolved.

At the heart of the questions raised by the wife on her appeal from paragraphs 3, 5 D and 8 of the divorce action judgment is the contention that the trial court could not disregard the distribution of community property made by the parties in the property settlement agreement merely because the court was of the opinion that the distribution was not "fair and equitable".

Generally, a property settlement agreement entered into by the parties in contemplation of a divorce is valid, and, in the absence of fraud or undue influence, is binding upon the parties. Goodwin v. Goodwin, 47 Ariz. 157, 54 P.2d 268 (1936); Roden v. Roden, 29 Ariz. 398, 242 P. 337 (1926); In re Estate of Henry, 6 Ariz. App. 183, 430 P.2d 937 (1967). Counsel has not cited any decision, nor have we been able to find any, which holds that a *husband* may be relieved from the *property distribution* provisions of an otherwise valid and binding property settlement agreement merely because in the court's opinion the agreed distribution is not "fair and equitable". By dicta in some Arizona decisions, it is sometimes stated that the distribution must be fair and equitable to the *wife, see* Roden v. Roden, *supra.* Further,

---

per month, payable on the 1st day of each month, with the first payment to commence the 1st day of April, 1967, and a like payment on the 1st day of each succeeding month. Said alimony payments to terminate upon the death or remarriage of the Defendant.' "

3. The judgment in the *divorce* action granted to the wife $12,500.00 for at-

torney's fees (paragraph 12 thereof). The wife contends that because of the agreement, she was not entitled to any award for attorney's fees in the divorce action, but rather that pursuant to the terms of the agreement she should have been awarded $10,000.00 for attorney's fees as a part of the judgment in the contract action.

in In re Estate of Harber, 104 Ariz. 79, 449 P.2d 7 (1969), the *holding* of the court was that it would not enforce a post-nuptial (not in contemplation of divorce) property settlement agreement where the distribution of the property to the *wife* was not fair and equitable to her. However, in our opinion there is no sound basis for, nor do we believe that Harber, *supra*, requires, the application of the fair and equitable standard to all property settlement agreements. We concur with the statement found in 24 Am.Jur.2d Divorce and Separation § 896, at 1016 (1966):

> "The courts occasionally state that a property settlement or separation agreement must be fair and reasonable to the wife, but in evaluating such statements certain distinctions must be made. When a husband and wife are living together as such, and they make a contract, they occupy a confidential relationship, or a relationship of trust and confidence, and it is generally assumed that the husband has a dominant influence over the wife, for which reason it is held that a contract, to be valid, must be fair and reasonable as to the wife." (Footnotes omitted).

In Harber, the reasons for the application of the "fair and equitable" standard were inherent in the fact situation before the court—a confidential relationship existing between the husband and wife living together, with the wife not even being afforded the elemental protection of representation by independent counsel. Under such circumstances, logically the fair and equitable standard would also be available to a wife insofar as concerns a property settlement agreement entered into in *contemplation of a divorce*. Moreover, this same protection should also be available to a husband, if the circumstances showed that at the time of the execution of the agreement there was in existence the necessary confidential relationship and that the wife had exercised a dominating influence over the husband. However, such circumstances were not present here. At the time of execution of the separation and property settlement agreement on May 18, 1966, a confidential relationship did not exist between these parties. They had been living separate and apart for almost twelve months. The husband was not in any way under any dominating influence of his wife—he had filed a complaint for divorce some eleven months previously. Both sides were represented by independent counsel and the divorce action and counterclaim for divorce were being hotly contested with serious and bitter charges and counter-charges involved. The attorneys for the wife had proposed several prior property settlement agreements, all of which had been rejected by the husband. The record shows that when these parties finally got together to draft and execute the property settlement agreement here involved, it was both legally and literally an "at arms length" transaction. Under these circumstances we hold that the *property distribution* provisions of the property settlement agreement could not be disregarded or modified by the court merely because in the court's opinion the division agreed to by the parties was not "fair and equitable".

Our above holding is limited to the property division or distribution provisions of the agreement, and does not apply to provisions for the support and maintenance of the wife and minor son. In a divorce action the court is not always bound by *support or alimony* provisions of a property settlement agreement, but rather, under circumstances showing changed conditions may either accept, reject or modify the same. McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625 (1961); Simpson v. Superior Court, 87 Ariz. 350, 351 P.2d 179 (1960); Gillespie v. Gillespie, 74 Ariz. 1, 242 P.2d 837 (1952). However, "support" or "alimony" payment provisions which constitute "* * * a substitute for [the wife's] right in the community estate. * * *", McNelis, *supra*, or which are "in payment for property rights", Gillespie, *supra*, cannot be subsequently modified by the court. *See also* 24 Am.Jur.2d Divorce and Separation § 909, at 1033 (1966).

■ Applying these principles to the judgment in the divorce action, subparagraph 5 D thereof relating to the Mummy Mountain Estates property clearly concerned property distribution provisions of the property settlement agreement, was contrary thereto, and therefore must be modified so as to be in accord with the agreement. However, the application of these principles to paragraph 8 of the judgment is not subject to such simple resolution. It must first be determined whether paragraph X of the separation and property settlement agreement is merely a provision for support and maintenance of the wife, and thus is subject to modification by the court as set forth in paragraph 8 of the judgment, or is in fact a provision in payment for the wife's property rights in the community estate and not subject to modification. At this point it might be well to mention that although there was some contention at the outset of this litigation that certain real property was the separate property of the wife, and that the stock ownership in the Judson School was the separate property of the husband, both parties on this appeal have taken the position that all of the property disposed of by the trial court in its judgment constituted community assets.

In determining whether support and maintenance provisions in a property settlement agreement constitute consideration for property settled on the husband, or, stated another way, constitute a part of the wife's share in the community property, the Court must take into consideration all relevant factors, including the provisions of the agreement, the circumstances under which the agreement was made, and the nature and value of the community estate divided between the parties. *Simpson, supra.*

■ In applying these criteria to the property settlement agreement here involved, we have arrived at the conclusion that the "support and maintenance" provisions of paragraph X are inseparable from, constitute a part of the consideration for settlement of property upon the husband, and were intended to compensate the wife in part for her share of the community estate. Referring first to the terms of the agreement, it will be noted that the monthly payment provision does not contain the ordinary support termination provision that the payments are to terminate upon remarriage of the wife. Rather, the agreement provides for payment of a specified sum certain for a period of eleven years, subject to being reduced to a lesser amount at that time if the wife has remarried. Further, the obligation to make these payments is to survive the death of the husband. Generally, the death of the husband or remarriage of the wife terminates any pure support duty. *See* 24 Am.Jur.2d Divorce and Separation § 690 (1966); Annot., 48 A.L.R.2d 270 (1956), and the cases cited therein.

The fact that the agreement states that these payments are "for the support and maintenance of the wife" is not determinative. *Simpson, supra.* While neither of the above factors standing alone would be conclusive, when taken together they indicate that something over and above the ordinary support obligation was intended. And, the testimony of the parties bears out this conclusion. Mrs. Wick testified as to Mr. Wick's approach to this phase of the settlement as follows:

"Q What did Henry say about this phase of the contract?

"A That he considered it fair because he couldn't give me the property, he couldn't give me a cash settlement, and this would be in lieu of the cash settlement because of my stock in the school and what I had done."

Mr. Wick confirmed this intent as follows:

"Q Mr. Wick, in your discussions with Mrs. Wick for a property settlement agreement time and time again you have discussed with her the fact that her alimony would continue for a certain period of time or for her life in order to

compensate her for her share in the school, haven't you?

"A Yes."

Some further support for the contention that the provisions for payments to the wife were in part consideration for the wife's share of the community assets is indicated by the values of the community property agreed to be distributed to each. Although the valuation testimony was at best skimpy, it does indicate that the total value of the property set over to the wife under the agreement was approximately $270,750.00.[4] On the other hand, the total value of property set over to the husband was approximately $437,800.00.[5] Considering the provisions of paragraph X of the agreement, the testimony of the parties and the values involved, we think the conclusion is inescapable that the support provisions were intended as a substitute for, or, in payment of a part of the wife's interest in the community assets. We therefore hold that paragraph 8 of the divorce action judgment must be modified so as to conform to the agreement of the parties as set forth in paragraph X of the separation and property settlement agreement. Having concluded that the provisions of payments to the wife were intended as payments in lieu of property distribution we need not decide whether under the facts of this case these payments could have been initially modified by the trial court if they had been true "support" payments.

It is apparent from the evidence that the requirement that the husband pay the wife $2,700.00 per month may be quite burden-some to the husband. However we find no support in the record for the statement in counsel's brief that this provision "in fact gave [husband's] entire income to [wife] for the balance of her life * * *." This $32,400.00 annual payment requirement does not approach the over $68,000.00 annual income of the husband for the four years immediately preceding the filing of the divorce action. Further, the significance of this annual requirement is greatly lessened when it is taken into consideration that the parties agreed that the wife was to bear the income tax consequences of these payments.

■ We find no support in the record for the husband's contention that the agreement was the result of duress, undue influence and unfair persuasion exercised by the wife over the husband. Certainly the facts do show that both parties were distressed as to the possible adverse effect additional unfavorable trial publicity might have on Judson School and were probably to some extent motivated by this consideration as well as by considerations as to the welfare of their minor son. However, there is no evidence of any wrongful acts by the wife, nor is there any evidence which would indicate that the husband's manifestation of assent to the separation and property settlement agreement was without his volition. Rather, the time circumstances and the "give and take" negotiations between the parties which led to the signing of the agreement clearly indicate a self-motivated volitional choice by the husband between alternative courses of conduct then available to him. In short,

---

4. Approximate valuations of property set over to the wife were as follows:

| | |
|---|---|
| Scott Lake Property | $128,250.00 |
| Hawley Lake Cabin | 15,000.00 |
| Mummey Mountain Estates Lot | 30,000.00 |
| Davis Property | 89,500.00 |
| Automobiles | 8,000.00 |
| Total | $270,750.00 |

5. Property set over to the husband was as follows:
(a) Indian Bend residence, guest house and Palo Verde dormitories ......... $ 86,500.00 (There is some testimony indicating that the capitalized valuation of the dormitories alone should be in excess of $220,000.00).

(b) The stockholdings in Judson School 325,000.00 (There was no direct testimony as to the value of this stock. However, the other one-half of the outstanding stock was purchased from the other stockholder by the corporation in 1963 for $325,000.00. Further, the husband's counsel states in his brief on appeal that in 1966 the "net worth of Judson School" was $515,523.00).

(c) Interest in Judson School Profit Sharing Plan ...................... 26,300.00

| | |
|---|---|
| Total | $437,800.00 |

there was no evidence of duress which would vitiate an otherwise valid contract. As stated in Dunbar v. Dunbar, 102 Ariz. 352, 356, 429 P.2d 949, 953 (1967):

> "It is not duress to declare an intention to resort to the courts for the purpose of insisting on what one believes are one's legal rights." (Citation omitted).

See also, In re Estate of Henry, supra; In re Cohen, 105 Ariz. 337, 464 P.2d 620 (1970); Carrillo v. Murray and Layne Co., 25 Ariz. 303, 216 P. 689 (1923); Restatement of Contracts § 492 (1932). The evidence supports the trial court's specific finding in the divorce action that the settlement agreement was not signed by the parties as a result of duress. Counsel for the husband next contends that the agreement resulted from exercise by the wife of "undue influence and unfair persuasion", relying upon the Restatement of Contracts § 497 (1932) which provides as follows:

> "*Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare*, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable." (Emphasis supplied).

From what we have previously stated it is apparent that at the time of the signing of the settlement agreement no confidential relationship existed between these parties. Neither was subject to domination by the other, and certainly neither would have been justified in assuming that the other would not act in a manner inconsistent with his or her welfare. By his prior conduct in filing the divorce action, in rejecting prior property settlement attempts, and in general conducting himself in a manner consistent with furthering his own individual interests, it is obvious that the husband was not in any way dependent upon the wife to the extent that he would be subject to such undue influence or unfair persuasion as would afford a legal basis for voiding the property settlement agreement.

We agree with the holding of the trial court, implicit in its judgment for the wife on Count I of the husband's counterclaim in the contract action, that the property settlement agreement was not the result of undue influence or unfair persuasion by the wife. Further, we do not interpret paragraph X of the agreement as an unlawful attempt to usurp the trial court's jurisdiction to modify the support provisions of the agreement under appropriate circumstances.

■ A final contention raised by the husband is that the trial court erred in denying the husband's counterclaim for reformation in the contract action. Suffice it to say that there was no error—the husband did not introduce any evidence showing that the separation and property settlement agreement did not accurately state the agreement actually intended by the parties. There was no showing that there had been a preexisting oral agreement which had been reduced to writing in inaccurately stated or mistaken terms. See State v. Ashton Co., 4 Ariz.App. 599, 422 P.2d 727 (1967), appeal after remand, Ashton Co., Inc., Contractors & Engineers v. State, 9 Ariz.App. 564, 454 P.2d 1004 (1969).

We find that the property settlement agreement was valid and enforceable and therefore hold that the trial court committed error in refusing to give judgment for the wife in the contract action, (Civ.No. 189462) for attorney's fees in accordance therewith in the sum of $10,000.00. Upon remand the trial court is directed to modify that judgment so as to include that amount. In all other respects, the contract action judgment is hereby affirmed.

We further hold that upon remand the judgment in the divorce action (No. D–85262) must be modified as follows:

1. Paragraph 3 thereof shall be modified by striking therefrom the following language:

> "but that said agreement does not represent a fair and equitable distribution of the community property of the parties, and for that reason the cour

refuses to merge said separation and property settlement agreement into its decree."

2. Subparagraph 5 D shall be deleted and appropriate modification made so as to award the real property described in subparagraph 5 D to the wife.

3. Paragraph 8 shall be deleted and appropriate modification made so as to comply with the provisions of paragraph X of the separation and property settlement agreement relating to the support and maintenance of the wife.

4. Paragraph 12 awarding the wife $12,500.00 as and for attorney's fees shall be deleted.

Remanded for further proceedings not inconsistent with this opinion.

JACOBSON, P. J., and EUBANK, J., concur.