877 P.2d 304

**In re the Marriage of Harold A. SHARP, Petitioner–Appellee,**

**v.**

**Nansi J. SHARP, Respondent–Appellant.**

**No. 1 CA–CV 92–0163.**

Court of Appeals of Arizona, Division 1, Department A.

July 12, 1994.

Law Offices of William M. Piatt, P.C. by William M. Piatt, Phoenix, for appellant.

Novak & Anderson, P.C. by Wm. David Anderson, Phoenix, and Law Offices of Daniel J. Oehler by George F. Davis Cummings, Bullhead City, for appellee.

## OPINION

EHRLICH, Judge.

Nansi J. Sharp challenges the trial court's grant of summary judgment approving a settlement agreement between her and Harold A. Sharp in a marriage dissolution action. We hold that, because Nansi alleged that the agreement provided for an unfair division of the parties' property, the trial court should not have approved the agreement without independently determining whether the settlement was in fact equitable.

## FACTS AND PROCEDURAL HISTORY

Harold and Nansi were married on June 3, 1988. Prior to their marriage, the two were romantically involved for approximately ten years. During that time, Harold paid for Nansi's education and all of her living expenses. On July 25, 1990, Harold filed a petition for dissolution of the marriage. Both parties initially were represented by counsel but, in early June 1991, Harold's attorney withdrew and Harold proceeded to contact Nansi directly concerning the resolution of the property issues although Nansi still was represented by counsel. She also was incarcerated in Hawaii.

On July 24, 1991, Nansi signed a settlement agreement dated July 2, 1991, that was handwritten by Harold and signed by him on July 2. The agreement included two amendments dated July 18 and 19. The major provisions of the agreement and amendments are as follows:

1. Nansi would receive the couple's California house and all personal property in the house. Harold would pay the mortgage and also the insurance and taxes until the mortgage was fully paid.

2. Nansi would receive a 1988 Mercedes Benz. Harold would make the payments and pay the insurance and license fees until the balance owing on the car was fully paid.

3. The couple's Hawaii house would be sold and the sale proceeds used to pay the costs of the sale, the mortgage, the Mercedes and the California house in that order. Nansi would be allowed the use of the Hawaii house until the case against her was resolved.

4. All property owned by the parties before their marriage would remain sole and separate property.

5. All Arizona property would become Harold's sole property.

6. Harold would bring current the past-due bills of the gardener, pool service, plumber, pest control service and security patrol as soon as the dissolution was granted.

7. Within 90 days after entry of the decree of dissolution, Harold would pay Nansi $55,500 for maintenance, loans and credit card bills for Nansi and her mother.

8. Harold would pay Nansi's attorney $4500 and would also pay for any document preparation necessary to implement the settlement agreement.

9. Harold would provide in his will that the terms of the settlement would be carried out by his estate.

10. Harold would sell a piece of Arizona property prior to entry of the decree with the funds to go immediately to Nansi as a credit against the $55,500 payment.

11. Harold would pay the portion of Nansi's medical bills not covered by insurance.

In August 1991, Harold retained counsel. By letter dated August 16, 1991, Harold's attorney advised Nansi's attorney of the settlement and proposed that final documents be prepared based on the agreement. Nansi

wrote her attorney that the settlement and a proposed sale of property in Fort Mohave were "fine." However, her attorney did not accept the agreement.

In October 1991, Harold filed a combined motion for summary judgment/motion to enforce agreement in which he stated that, by the settlement, the parties had resolved all of the issues before the court. He asked the trial court to enforce the agreement and incorporate it into its final order. In his affidavit accompanying the motion, Harold stated that the settlement was fair and equitable because it gave Nansi more than half of the community estate. He did not, however, describe the composition of the estate.

Nansi opposed the motion, arguing that the agreement was not valid because it was unfair and the result of undue influence and overbearing tactics by Harold. She also contended that the settlement was void because, in negotiating the agreement, Harold had refused to communicate with her through her counsel. In an affidavit, Nansi maintained that she was destitute and that Harold had used her financial circumstances as bargaining leverage in the negotiations. She stated that she had been under extreme emotional distress when she signed the agreement because she had been incarcerated on a criminal charge, was unable to afford a defense attorney, and was being hounded by creditors. She added that Harold had told her that he would settle on more favorable terms if she negotiated with him directly and that he would give her no financial assistance until she signed the agreement.

Nansi further claimed that Harold had taken advantage of her because the settlement prevented her from sharing in Harold's development corporation and real estate in Arizona, which she characterized as community assets. In an earlier affidavit filed with the court, Nansi had attested that, throughout their relationship, Harold had been secretive about his financial affairs and that she did not know the nature and extent of their assets. She named some of the projects he had developed in Bullhead City and southern California and stated that she believed his net worth might exceed $10,000,000.

The trial court granted the motion, determining that

the parties apparently settled this litigation between themselves and that such settlement is in writing and has been partially performed. The Court cannot find that any undue influence was exerted and particularly notes that the written agreement was amended over a period of time. Whether the agreement had the approval of counsel or whether it was "good" or "bad" should not be upset by this Court. The Court should encourage the settlement of litigation.

Harold subsequently filed a motion to clarify the term "maintenance" as used in the agreement, arguing that the $55,500 constituted spousal maintenance. Nansi responded that the word as used in the agreement was ambiguous and asked the trial court to conduct an evidentiary hearing to determine the intent of the parties. The court determined that the parties intended the agreement to resolve all issues between them and that the word "maintenance" referred to spousal maintenance. The court then set the action for default.

Following a default hearing, the court entered the decree of dissolution on January 14, 1992. The decree said that the "Agreements are not unfair" without further findings on the issue. Nansi timely appealed.

## DISCUSSION

 Summary judgment may only be granted when "reasonable people could not agree with the conclusion advanced by the proponent of the claim," *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990), and the moving party is entitled to judgment as a matter of law. Ariz. R.Civ.P. 56(c). Our review is de novo, viewing the evidence in the light most favorable to the party opposing the motion. *Riley, Hoggatt & Suagee, P.C. v. English*, 177 Ariz. 10, 12–13, 864 P.2d 1042, 1044–45 (1993).

 The trial court may approve a valid separation and property settlement agreement and incorporate it into the dissolution decree if the agreement is free from fraud or undue influence and if it is fair and equitable.

Ariz.Rev.Stat.Ann. ("A.R.S.") § 25–317(A); *Wick v. Wick,* 107 Ariz. 382, 384, 489 P.2d 19, 21 (1971); *In re Estate of Henry,* 6 Ariz.App. 183, 185–86, 430 P.2d 937, 939–940 (1967). We will not interfere with a trial court's distribution of marital property absent an abuse of discretion. *Wick,* 107 Ariz. at 385, 489 P.2d at 22. However, the trial court is obliged to execute a distribution of the parties' property which it determines to be just. *Id.*

## A. Validity and Fairness of the Agreement

[6] We first consider Nansi's argument that the court should not have accepted the agreement because she was compelled to sign it without consulting her attorney. She claims that, although she was represented, Harold had pressured her to sign the settlement without consulting her counsel and that she had mistakenly thought that her attorney may have abandoned her case when his office did not accept a collect telephone call. However, nothing in the record indicates that Nansi was prevented from contacting her attorney regarding the agreement. Further, she never stated that Harold threatened her with any illegal action, that he refused to settle if she contacted an attorney or that he prevented her from contacting an attorney. Instead, in an affidavit, Nansi admits that, when she placed the call to her attorney's office that was refused, she was "undecided about whether [to] discuss the proposed settlement agreement with him." In addition, even if she was unable to contact counsel on one occasion, Nansi does not give any reason why she could not have attempted to call her attorney again or communicated with him by mail. In fact, Harold and Nansi amended the agreement twice between the date when Harold signed it and the date when Nansi signed it, indicating that Nansi had several weeks to contact her attorney while she negotiated the settlement terms. Accordingly, the trial court was not precluded from ac-

cepting the settlement based only on Nansi's execution of the agreement without her attorney's knowledge.[1]

We likewise reject Nansi's assertion that she was entitled to a hearing to determine whether she signed the agreement as the result of duress, coercion or undue influence. This court rejected a similar argument in *Rubenstein v. Sela,* 137 Ariz. 563, 672 P.2d 492 (App.1983). There the wife contended that an agreement to assign her interest in property to her husband was void because she signed it under duress caused by her husband's threat that he would leave her if she did not give him the property. The court said:

> The test of what act or threat constitutes duress is determined by considering whether the threat placed the party entering into the transaction in such fear as to preclude the exercise by him of free will and judgment. . . . By definition, an act or threat to constitute duress must be "wrongful."

*Id.* at 565, 672 P.2d at 494, quoting *Dunbar v. Dunbar,* 102 Ariz. 352, 355–56, 429 P.2d 949, 952–53 (1967). The court then concluded that the husband did not act wrongfully in threatening to leave the marriage and that, if the wife felt compelled to yield to his wishes, it was because she had a motive to execute the challenged documents. *Id.; see also Henry,* 6 Ariz.App. at 186, 430 P.2d at 940 (husband's distress over impending divorce not grounds to void signed settlement and separation agreement).

■ Similarly, Harold's insistence that Nansi would get the best distribution if she executed the agreement is not wrongful behavior and does not constitute duress, coercion or undue influence. Nansi was represented by counsel and she could have asked him to evaluate her chances for a more favor-

---

1. The situation of Nansi is distinguishable from the circumstances of the wife in *Hess v. Hess,* in which this court concluded that, when the prospective spouse who is responsible for the drafting of a prenuptial agreement stands in the strongest financial and bargaining position and benefits disproportionately from the agreement, the dominant party must ensure that the agree-

ment is explained to the other party by independent, knowledgeable counsel. 151 Ariz.Adv.Rep. 20, 25 (App. Nov. 4, 1993). In *Hess,* the wife incorrectly believed that she was in fact represented by the husband's attorney who drafted the agreement, and neither the attorney nor the husband encouraged her to have the agreement reviewed by independent counsel.

able outcome if the court distributed the parties' property.

■ Nansi's distress due to external circumstances, the criminal charge against her and her financial situation, does not raise Harold's entreaties to sign the agreement to the level of duress, coercion or undue influence. Harold was not responsible for the charge against Nansi, and she could have petitioned the trial court for temporary maintenance during the pendency of the dissolution action. *See* A.R.S. § 25–315(B). Therefore, under the facts of this case, Nansi was not entitled to a hearing on whether the agreement was invalid due to duress, coercion or undue influence, and the trial court properly rejected this argument.

■ We also reject Nansi's contention that there was a factual dispute concerning the existence of the settlement. The agreement was in the record, and there was no dispute that Harold and Nansi both signed it. Harold never repudiated the settlement and, as said above, the lack of approval by Nansi's attorney neither negated the existence of the agreement nor invalidated it.

■ Nansi, however, further argues that, because she maintained in her affidavit that the property division in the agreement was inequitable, the trial court erred in granting summary judgment. She claims that section 25–317(B) required the court to determine whether the settlement was fair before accepting its terms and that summary judgment should not have been granted in light of the factual dispute raised by her affidavit. We agree.

The trial court must determine for itself whether a separation agreement is indeed satisfactory. A.R.S. § 25–317(B); *see, e.g., In re Estate of Harber,* 104 Ariz. 79, 88, 449 P.2d 7, 16 (1969). This obligation is in concert with the statement of the supreme court in *Wick* that the trial court is obliged to achieve a fair and equitable distribution of the property and is "not foreclosed from doing so by the parties' separation and property settlement agreement." 107 Ariz. at 385, 489 P.2d at 22. "To hold otherwise would, in effect, allow parties to a [dissolution] to completely defeat the authority ex-

pressly conferred upon the trial court by our statute." *Id.*

■ In devising a fair and equitable distribution, the trial court must consider "all the evidence before it relating to the agreement, together with all other evidence concerning the relation of the parties at the time of trial, their ages, financial conditions, opportunities, and the contributions of each to the joint estate." *Id.* Accordingly, the court need also determine what assets comprise the community estate and whether the party challenging the agreement had full knowledge of the property involved. *Harber,* 104 Ariz. at 88, 449 P.2d at 16. It is the burden of the party asserting the validity of the agreement to prove by clear and convincing evidence that it is fair and equitable. *Id.*

■ In his affidavit accompanying his motion for summary judgment, Harold attested that the settlement agreement effected a fair division of the community assets. In her affidavit, Nansi stated that the division was not fair and equitable. Neither party introduced evidence to show what property constituted community property; Nansi had attested that she was unaware of the nature and extent of the community assets. Harold only had stated that transfers from his sole and separate property to Nansi during the marriage were for the purpose of providing for the needs of the marital community and that the value of the properties transferred into joint or common ownership were considered in the settlement. However, he did not identify the property.

While it is possible for the trial court to decide by summary judgment whether an agreement is equitable, in this case there were plainly disputed facts on the question of the fairness of the agreement, and the court was presented no evidence as to the extent of the community assets. Although the dissolution decree states that the parties' agreements are not unfair, neither the decree nor the court's minute entry granting summary judgment contains any basis on which the court could have made such a determination and, indeed, there is no evidence in the record on which such a conclusion could be based.

In addition, the trial court incorrectly stated that the settlement should not be disturbed by a judicial determination of whether the settlement was "good" or "bad." To the contrary, pursuant to section 25–317(B), it is the court's duty to ensure that any separation and property settlement agreement reached by the parties is fair and equitable. Because the court failed to independently resolve this issue, we reverse the summary judgment and remand for further proceedings on the question of whether the settlement agreement provides for a fair and equitable division of the parties' marital property.

### B. Meaning of "Maintenance"

■ The settlement agreement provides that Harold would pay $55,500 "to cover all maintenance, loans and credit card bills for Nansi and her mother." Harold argued to the trial court that this provision referred to spousal maintenance. He noted that the parties had stated in the agreement that "this settlement includes all of our wishes" and that it was clear from the agreement that they had intended to resolve all of the issues between them, including the division of property and debt, and spousal maintenance. He thus asserted that the provision for "maintenance" was for spousal maintenance.

In response, Nansi argued that the word "maintenance" in the agreement was ambiguous and that the court should hold an evidentiary hearing with regard to the intent of the parties before ruling on whether the term referred to spousal maintenance. She asserted that it referred to maintenance such as gardening and pool service on the home as described in the preceding paragraph. Nansi also argued that, if "maintenance" referred to spousal maintenance, the sentence in which it was used would not have also provided for payments of loans and credit cards

and referred to the financial obligations of her mother.

The trial court ruled that it was clear from the agreement that the parties intended to settle all of the issues between them and thus that the word "maintenance" referred to spousal maintenance. We conclude to the contrary, that it is not so clear that the trial court could have reached this conclusion without further consideration of the intent of the parties. Arguments by both of them regarding the meaning of "maintenance" are plausible.

### C. Attorneys' Fees

■ Both parties request an award of attorneys' fees incurred in this appeal pursuant to A.R.S. section 25–324, which allows a court to order one party in a dissolution of marriage action to pay the costs and fees of the other party after considering the financial resources of both parties. We do not have before us any evidence of the current financial resources of the parties. Therefore, given that this case is being remanded for further proceedings, we leave to the trial court resolution of an award of attorneys' fees for this appeal based on its consideration of the parties' current financial resources.

The judgment is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

GRANT, P.J., and VOSS, J., concur.