NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

JACQUELINE M. TAUSCHER (fka HANSHEW), *Petitioner/Appellant*,

*v.*

ERIC A. HANSHEW, *Respondent/Appellee*.

No. 1 CA-CV 15-0661 FC
FILED 4-13-2017

Appeal from the Superior Court in Maricopa County
No. FC2013-053238
The Honorable Jerry Porter, Judge (Retired)

**AFFIRMED**

COUNSEL

Jones, Skelton & Hochuli PLC, Phoenix
By Lori L. Voepel
*Counsel for Petitioner/Appellant*

Burt Feldman & Grenier, Scottsdale
By Elizabeth Feldman
*Co-Counsel for Respondent/Appellee*

Melinda K. Cekander, Heron, Montana
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Judge Maurice Portley[1] delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Chief Judge Michael J. Brown joined.

---

**P O R T L E Y**, Judge:

**¶1**   Jacqueline M. Tauscher ("Mother") appeals from a decree of dissolution entered after the parties disputed the terms of a handwritten settlement agreement. For the reasons stated below, we affirm the decree.

## BACKGROUND

**¶2**   Mother filed a petition to dissolve her marriage to Eric A. Hanshew ("Father") in July 2013. On the scheduled trial date, and in lieu of a trial, the parties resolved their dispute and presented the family court a handwritten agreement, prepared by Father's attorney, which represented their agreements. The court then placed the parties under oath, asked them questions, and both parties confirmed on the record that (1) the handwritten document represented their agreements and (2) they understood the document and entered into the agreements freely, without duress. The court accepted the handwritten document, as well as two other provisions regarding parental communication and summer vacation time as a "Rule 69 Agreement." *See* Ariz. R. Fam. Law P. 69 ("ARFLP") ("Rule 69").[2] The court further found the agreement was fair and reasonable, and ordered Father's attorney to prepare a final decree.

**¶3**   Father's attorney prepared a proposed consent decree, which Mother refused to sign. Her attorney withdrew from the case and Father's attorney filed the unsigned proposed consent decree with the court. Mother retained another attorney, objected to Father's proposed consent decree, and submitted her own proposed consent decree, which she

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] Absent material revision after the relevant date, we cite the current version of court rules and statutes.

claimed accurately represented the parties' agreements. Without noting that there were competing decrees, the court signed Mother's proposed decree. Father then moved to set aside the decree, and the court held a status conference.

¶4 At the conference, the family court referred to the handwritten agreement, and considered the parties' statements to the court confirming they had entered into the agreement. It also considered argument from counsel as well as exhibits attached to Mother's pleadings supporting her position. The court reviewed the handwritten statement against the signed decree and Father's proposed decree.

¶5 Father submitted another proposed decree following the status conference and Mother filed her objections. The court signed Father's proposed decree (the "Final Decree"), thereby implicitly overruling Mother's objections. She filed her notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

### I. The Family Court Satisfied its Obligation to Ensure the Rule 69 Agreement and Final Decree were Fair and Equitable.

¶6 Mother contends the family court abused its discretion by denying her the opportunity to establish that the Rule 69 Agreement contained errors, resulting in a Final Decree that was not fair and equitable.

¶7 Section 25-317 states that parties to a dissolution proceeding may enter into a written agreement regarding, among other things, the disposition of property, spousal maintenance, and child custody matters. Moreover, the statute provides that the court retains discretion to reject the parties' agreement if it finds the terms are not fair and equitable. *See* A.R.S. § 25-317(B).

**¶8**        Rule 69 also allows the parties to enter into an agreement in a family court matter.[3]  Rule 69(A) provides that "[a]n Agreement between the parties shall be valid and binding if . . . the agreement is in writing, or [if] the terms of the agreement are set forth on the record before a judge. . . ."  ARFLP 69(A) (1)-(2).

**¶9**        The plain language of Rule 69 does not require the parties to sign the agreement for it to be enforceable, especially where the parties enter the written agreement into the record, and tell the court, under oath, they have freely and voluntarily made the agreement.  And because Rule 69 was adapted from Arizona Rule of Civil Procedure 80(d), we look to the cases interpreting Rule 80(d) for guidance.  ARFLP 69, comm. cmt.; *see also* Ariz. R. Civ. P. 80(d).  The plain language of both Rule 80(d) and Rule 69(A)(1) require a settlement agreement to be in writing.; namely, as we said in *Canyon Contracting Co. v. Tohono O'Odham Housing Authority*, the material terms of the agreement had to be in writing.  172 Ariz. 389, 392–93 (App. 1992).  Similarly, Rule 69(B) provides that the parties' written agreement is presumed valid, but the court retains discretion to reject the agreement pursuant to A.R.S. § 25-317.  And the rule places the burden of proof on the party challenging the validity of the agreement.

---

[3] Rule 69 provides that:
> A. An Agreement between the parties shall be valid and binding if
> 1. the agreement is in writing, or
> 2. the terms of the agreement are set forth on the record before a judge, commissioner, judge pro tempore, court reporter, or other person authorized by local rule or Administrative Order to accept such agreements, or
> 3. the terms of the agreement are set forth on any audio recording device before a mediator or settlement conference officer appointed by the court pursuant to Rule 67.
> B. Any agreement entered into by the parties under this rule shall be presumed to be valid and binding, and it shall be the burden of the party challenging the validity of the agreement to prove any defect in the agreement, except that nothing herein shall preclude the court from exercising its independent discretion pursuant to A.R.S. § 25-317. Pursuant to A.R.S. § 25-324, the court may award a party the cost and expenses of maintaining or defending a proceeding to challenge the validity of an agreement made in accordance with this rule.

¶10 Mother argues the family court erred in concluding she had the burden of proving the Rule 69 Agreement was invalid. Citing *Sharp v. Sharp*, 179 Ariz. 205, 210 (App. 1994), Mother contends Father bore the burden of proving the agreement was valid. Father argues Rule 69(B) places the burden of proof on Mother. The appropriate burden of proof is a question of law which this court reviews de novo. *Am. Pepper Supply Co. v. Fed. Ins. Co.*, 208 Ariz. 307, 309, ¶ 8 (2004).

¶11 In *Sharp*, wife signed a settlement agreement presented to her by husband. 179 Ariz. at 207. Although both parties were initially represented by counsel, after husband's counsel withdrew, husband began to negotiate directly with wife. *Id.* After wife's attorney refused to accept the agreement, husband moved to enforce it in a motion to enforce/motion for summary judgment. *Id*. at 207-08. In response, wife alleged the agreement was invalid because it was unfair and she was under duress when she signed it. *Id*. Thus, *Sharp* did not involve a presumptively valid Rule 69 Agreement; instead, it was decided on summary judgment where the moving party bears the burden of proof. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 26 (App. 2008). And because there was a factual dispute about both whether it was fair and entered into freely, husband was not entitled to summary judgment. *Sharp*, 179 Ariz. at 210-11. Here, given the court's prior determination that the parties had freely entered into the Rule 69 Agreement, and it was fair and reasonable, Mother, as the party challenging the agreement, bore the burden of proof.

¶12 Mother also argues she was entitled to an evidentiary hearing once she challenged the validity of the agreement and the court failed to determine the extent of the community assets. *Sharp* explained when the need for an evidentiary hearing might arise:

> While it is possible for the trial court to decide by summary judgment whether an agreement is equitable, in this case there were plainly disputed facts on the question of the fairness of the agreement, and the court was presented no evidence as to the extent of the community assets. Although the dissolution decree states that the parties' agreements are not unfair, neither the decree nor the court's minute entry granting summary judgment contains any basis on which the court could have made such a determination and, indeed, there is no such evidence in the record on which such a conclusion could be based.

179 Ariz. at 210.

¶13 Unlike *Sharp,* here, both parties met with counsel, negotiated an agreement, presented it to the family court, testified under oath they were familiar with and understood the agreement, and entered into the agreement freely without coercion or duress. Additionally, when the court accepted the parties' handwritten agreement, the record contained (1) Mother's proposed resolution statement and (2) the parties' joint pretrial statement detailing, among other things, the community assets and personal property, as well as a stipulation that no outstanding discovery issues existed. After Mother challenged the handwritten agreement, the court held a hearing and went through each disputed term. The court did not need to conduct a formal evidentiary hearing because it had other evidence in the record and heard from the parties and their attorneys. Under these circumstances, the court properly exercised its discretion to determine the Rule 69 Agreement, and resulting Final Decree, were fair and equitable. Mother has shown no abuse of discretion.

## II. The Court's Determination that Rule 69 Agreement and Final Decree Were Fair and Equitable is Supported by the Record.[4]

¶14 Mother claims the Rule 69 Agreement and resulting Final Decree were incorrect, unfair, or inequitable, specifically as to payments Father allegedly made from the home equity line of credit ("HELOC") and the value of the firearms. However, this claim is contrary to Mother's sworn statement at trial where she stated on the record that the handwritten agreement reflected her understanding of the terms agreed to by the parties.

¶15 The Rule 69 Agreement stated the parties would split the HELOC debt equally, and did not indicate the parties agreed Father would use his separate property to pay the civil attorneys' fees and fund the children's education accounts. By testifying that the handwritten agreement correctly reflected her understanding of the parties' agreement, Mother cannot now argue the parties actually agreed Father would use his separate property to pay these obligations. Neither Mother nor her attorney attempted to clarify the source of the payments to the children's education accounts and Father's civil attorneys' fees until after the agreement was

---

[4] For the first time in her reply brief, Mother contends the handwritten agreement did not meet the requirements of Rule 69 and is not enforceable because it was not signed. Issues raised for the first time in reply on appeal will not be considered. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007).

entered into and placed into the record, and Father had provided her with his initial proposed consent decree.

¶16        Contrary to her argument on appeal, at the status conference, Mother agreed to split the HELOC debt equally as of August 6, 2014. This concession was after Mother had reason to know Father used the HELOC funds to pay the civil attorneys' fees, education funds, and possibly a $10,000 advance payment made to Mother. Thus, Mother cannot now argue on appeal that the division of the HELOC was unfair.[5]

¶17        Mother argued the agreement to pay their own attorneys' fees included the $8,000 civil attorneys' fees. The evidence showed Father paid these fees from the HELOC before the petition for dissolution was served. Thus, Mother was aware, or had the ability to discover, that Father made this payment from the HELOC *before* she agreed to pay one-half of the HELOC balance.[6] Nothing in the record established that the fees were Father's separate obligation, or that the Rule 69 Agreement applied to the civil fees as well as the divorce attorneys' fees. Regardless, Father agreed to offset the civil attorneys' fees by paying the higher AMEX credit card debt.

¶18        Father charged $5,000 of his divorce attorneys' fees to a Cabela's Visa credit card just before the dissolution petition was served. The Rule 69 Agreement did not address the Cabela's Visa, but the Final Decree assigned that debt to Father, with Mother's agreement. As to the firearms, Mother agreed to an equalization payment of $10,894.50 based on the valuation in the personal property inventory attached to the Rule 69 Agreement. The inventory specifically valued the firearms at $4,554.50. Mother was represented by counsel, and she signed the first page of the inventory. Because she testified that the inventory correctly reflected her understanding of the terms of the parties' agreement, Mother cannot now argue that the firearms are worth more than the value stated in the inventory.

---

[5] Mother argues she did not waive this argument because it was raised in her objections with the family court and addressed at the status conference. The issue was raised, but *then* Mother's attorney agreed to pay half the HELOC debt at the status conference.

[6] This same reasoning applies to the children's education accounts, which appear to have been funded, at least in part, by HELOC funds in early 2013, several months before the petition for dissolution was filed.

¶19        Mother also contends Father should be estopped from arguing that she failed to establish the Rule 69 Agreement and Final Decree were unfair and inequitable because he objected when Mother attempted to introduce evidence.  She asks us to disregard Father's attempt to support the Final Decree by "show[ing] his math" because his attorney refused to disclose the source of the $10,000 advance payment and the education accounts.  However, Father's argument as to why the Rule 69 Agreement and Final Decree are fair remains the same as the argument made to the family court.  Consequently, and without considering any new arguments he makes, we find that the family court did not abuse its discretion by finding the Rule 69 Agreement was fair and reasonable.

## III.    Custody Evaluator

¶20        Mother argues the Final Decree included language regarding the custody evaluator's report to which the parties did not agree.  The Final Decree included the following language to which Mother objected:

> Mother has alleged the existence of domestic violence during the marriage, which Father denies.  The parties accept the conclusion and recommendation of the custody evaluator, John Moran, Ph.D., who found that an award of joint legal decision making and an equal parenting time schedule was appropriate and in the children's best interests.

Mother argues the parties did not accept Dr. Moran's report without qualification; thus, the language should be deleted from the Final Decree.

¶21        On the record before the family court, the parties agreed to two specific terms in Dr. Moran's report regarding parental communication and summer parenting time.  Language similar to that quoted above first appeared in Father's proposed consent decree.  Mother's proposed decree added the following italicized language: "The parties accept the conclusion and recommendations of the custody evaluator, John Moran, Ph.D. *(incorporating the report of Jill Messing, MSW, Ph.D., Domestic Violence Expert Witness)* who found that an award of joint legal decision making and an equal parenting time schedule was appropriate and in the children's best interests."  Mother argues she did not accept Dr. Moran's report without this qualification.  The record on appeal does not include the report from Dr. Moran or Dr. Messing.  Accordingly, we cannot ascertain how Mother was prejudiced by the deleted reference to Dr. Messing's report and cannot conclude the court abused its discretion by deleting this language.

## IV.　Attorneys' Fees and Costs on Appeal

**¶22**　　　Both parties request an award of attorneys' fees and costs on appeal pursuant to A.R.S. § 25-324 and Rule 69.　The record contains no current information regarding the parties' financial resources.　After considering the reasonableness of the positions taken by the parties on appeal, we decline to award attorneys' fees to either party.　As the successful party, Father is entitled to an award of costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶23**　　　We affirm the Final Decree of dissolution.



AMY M. WOOD • Clerk of the Court
FILED:　AA