THOMPSON, Presiding Judge:
¶ 1 Lettie Hutki (Wife) appeals from the trial court's order denying her motion concerning the fairness of a property settlement agreement (PSA) she entered with Dennis Hutki (Husband), at a private mediation, where both parties were represented by counsel. She also appeals from the decree that incorporates the terms of the PSA, which the trial court approved and signed on July 5, 2017, and entered the following day. For the following reasons, we affirm the trial court's decisions. Contrary to Wife's position on appeal, we hold that neither Arizona Revised Statutes (A.R.S.) section 25-317(B) (2018)[1] nor Sharp v. Sharp , 179 Ariz. 205, 877 P.2d 304 (App. 1994) requires a "fairness determination" hearing in all cases.
FACTUAL AND PROCEDURAL HISTORY
¶ 2 After approximately 41 years of marriage, Wife and Husband's marital union was dissolved on August 23, 2016. During the marriage, Wife had been a teacher. After she retired, Wife took on bookkeeping duties for Husband's family business, Hoenshied Family *806 Limited Partnership (HFLP).[2] Husband is a self-employed real-estate investor.
¶ 3 Before dissolution of the marriage, Husband and Wife participated in mediation, on May 26, 2016, wherein they addressed the division of their property, including business entities, a trust account, other financial accounts, and debts. The businesses were Blue Ink, LLC; D&L Consulting, Inc.; and HFLP.
¶ 4 Wife had consulted Kotzin Valuation Services (Kotzin) to assess the separate and marital community interest in these assets. Kotzin provided its valuation reports on May 17, 2016, prior to the mediation. A note contained in one of the Kotzin reports stated:
Despite repeated requests, Mr. Hutki never provided a clear listing of which business interests he believed to be community property and which he was claiming were sole and separate. As such, we performed our own procedures regarding the four identified business entities[3 ] and came to the following conclusions. These conclusions could materially change if Mr. Hutki were to produce further documentation for how the interests were obtained.
However, a March 15, 2016 email from Kotzin informed Husband "it looks like you have sent all of the items we have requested so far." During Kotzin's valuation, Husband also followed up with Kotzin to determine if additional information was needed. A valuation had also been done of "a 1 percent limited partnership interest in [HFLP]" in 2013.
¶ 5 Particularly as to HFLP, and relying on a 2015 partnership ledger of unit ownership, the Kotzin valuation concluded that 66.5 percent of the entities' shares, held by Husband and Wife, were rendered community property due to co-mingling of separate assets with community assets. The partnership had 99 limited partnership units. The Kotzin valuation noted Husband owned 62 limited partnership units, and 1 general partner unit, and Wife owned 3.5 limited partnership units. The shares were originally obtained as gifts to each party respectively. Husband, at various times, also had gifted away certain amounts of his limited partnership units.
¶ 6 At mediation, the parties reached full agreement regarding all but one issue-the division of three pieces of jewelry that were later awarded to Husband after a trial on the issue. The agreement specifically stated that "[a]ny dispute the parties [had] with each other over the sole or separate or community nature of their interest in [HFLP] is compromised by the agreements herein." The agreement was reduced to writing pursuant to Arizona Rules of Family Law Procedure (ARFLP) 69.[4] Both Husband and Wife acknowledged entering the PSA knowingly, voluntarily, intelligently, and with the advice of counsel. In her separate pre-trial statement relating to the jewelry, Wife also specifically acknowledged that, excepting the jewelry, the PSA "equalized the parties' assets and liabilities."
¶ 7 About six months after the parties' agreement, Wife filed a "Motion for Determination as to the Fairness of the Parties Property Division Agreement[,]" (the Motion). In the Motion, Wife stated certain reasons she believed the PSA was unfair, and requested that the trial court "make an independent determination of the fairness of the [PSA,]" pursuant to A.R.S. § 25-317(B), and Sharp . Sharp is the seminal case interpreting § 25-317(B).
¶ 8 Husband filed a "Notice of Lodging Decree of Dissolution of Marriage" pursuant to ARFLP 81. He requested that the court "sign and enter the same ... or, alternatively, enter the parties' [PSA] as a final Decree in this case." Wife filed an objection to the lodged decree. Husband then filed a "Notice of Lodging of Amended Decree (Amended Decree), which also reserved his right to file a response to the Motion. Husband subsequently *807 filed his response to the Motion. Wife did not file a reply.
¶ 9 In an unsigned minute entry filed January 5, 2017, the trial court denied the Motion after finding the PSA was "fair" and "equitable[.]" The court also indicated it would sign the Amended Decree given its conclusion regarding the PSA. The court signed Husband's Amended Decree. Wife timely appealed to this court from the signed decree. The trial court later issued another signed order, including the denial of the Motion and again stating it would sign Husband's Amended Decree. Wife then amended her appeal to challenge both the court's denial of the Motion and signing of the Amended Decree.
¶ 10 The signed Amended Decree contained language "reserv[ing] jurisdiction on the issue relating to the award of [the three pieces of jewelry.]" After receiving Wife's appeal, this court requested the parties file memoranda addressing whether all issues had been resolved by the Amended Decree. Wife did not submit a memorandum. Husband submitted a memorandum asserting that all claims had been resolved and averred the decree erroneously indicated the jewelry issue remained outstanding. This court then stayed the appeal, and revested jurisdiction in the trial court to permit the trial court to consider a motion for an amended decree that did not include the reserving language.
¶ 11 The parties subsequently stipulated to permit further amendment of the Amended Decree to exclude the statement reserving jurisdiction. A further amended decree, excluding the erroneous language (the Final Decree), was submitted to the trial court as an attachment to the stipulation.
¶ 12 The trial court ultimately entered an order approving the stipulation and the Final Decree. The court signed and filed the Final Decree. Wife timely appealed from the signed Amended Decree and Final Decree (hereinafter, the Decree) and denial of the Motion. This court has jurisdiction over Wife's appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1) (2018).
DISCUSSION
¶ 13 The dispositive issue before us is whether the trial court abused its discretion, in signing the Decree and denying the Motion, having found the PSA was fair and that there was no reason to set it aside. We find no abuse of discretion and affirm the trial court's decisions.
¶ 14 We review the trial court's distribution of marital property for an abuse of discretion. See, e.g. , Gutierrez v. Gutierrez , 193 Ariz. 343, 346, ¶ 5, 972 P.2d 676, 679 (App. 1998). The trial court abuses its discretion only where it "exceed[s] the bounds of reason," Toy v. Katz , 192 Ariz. 73, 83, 961 P.2d 1021, 1031 (App. 1997), or in exercising its discretion, commits an error of law, Boncoskey v. Boncoskey, 216 Ariz. 448, 451, ¶ 13, 167 P.3d 705, 708 (App. 2007). The trial court's interpretation of a statute, such as section 25-317(B), is reviewed de novo. See, e.g. , Riepe v. Riepe , 208 Ariz. 90, 92, ¶ 5, 91 P.3d 312, 314 (App. 2004).
I. Whether the Trial Court Abused Its Discretion
¶ 15 Wife asserts the denial of the Motion and signing of the Decree fails, "as a matter of law," because the trial court did not conduct a hearing to assess the PSA's fairness. On appeal, Wife argues that pursuant to section 25-317(B) and Sharp , the trial court was required to conduct a hearing-to allow the parties to present evidence, and consider the economic circumstances of the parties and other relevant evidence to determine the fairness of the PSA. She additionally argues that "without stating so, the trial court's ruling improperly placed the burden of proving that the property settlement was unfair on [her.]"
¶ 16 We find the trial court made a sufficient independent determination, as to the fairness and equitability[5] of the PSA, in compliance with section 25-317(B), and without *808 contravening Sharp . Accordingly, there is no basis for reversing the trial court's decisions.
¶ 17 As a preliminary matter, we address Wife's burden of proof argument. Citing Sharp , Wife implicitly contends Husband was required to prove the validity of the PSA by clear and convincing evidence. See 179 Ariz. at 210, 877 P.2d at 309 (citation omitted) (stating "[i]t is the burden of the party asserting the validity of the [separation or property] agreement to prove by clear and convincing evidence that it is fair and equitable"). We conclude, in this case, the issue of burden is collateral, and not material, as evidence supporting the trial court's fairness determination was already in the record.
¶ 18 Even if the burden issue was material to this appeal, we note Sharp relies on In re Estate of Harber , 104 Ariz. 79, 88, 449 P.2d 7, 16 (1969), for the burden proposition Wife cites. See Sharp , 179 Ariz. at 210, 877 P.2d at 309. However, Harber involved a post-nuptial agreement between married persons who were not "contemplating separation or divorce." 104 Ariz. at 84, 449 P.2d at 12. In any event, as to the proposition, both Sharp and Harber have been superseded by ARFLP 69, which directly applies to the relevant PSA.
¶ 19 Subsection B of ARFLP 69 states "it shall be the burden of the party challenging the validity of the agreement to prove any defect in the agreement[.]" Thus, to the extent this appeal is a challenge to the validity of the entire PSA, and the issue of burden could be deemed material, Wife bears such burden. There is nothing in the record supporting a conclusion that Wife has met such a burden.
¶ 20 Under the PSA, the parties were awarded their sole and separate property, any bank accounts existing in their own name, various vehicles,[6] and agreed to be responsible for and hold the other harmless for debts, except a residence awarded to Wife.
¶ 21 Wife additionally received the parties' Charles Schwab Investment Account (valued: $702,080), her retirement account (valued: $400,000), Husband's retirement account (valued: $37,000), two lots (valued: $250,000 each), a residence (valued: $1,420,000), cash value of Husband's life insurance policy (value not noted); equalization payments for vehicles (valued: $37,750); and another equalization payment of $400,000. The equalization payments, cumulatively, reduced Husband's value in property and assets by at least $437,750.[7]
¶ 22 Husband was essentially awarded the parties' non-liquid assets. He received Blue Ink, LLC (valued: $32,000 fair market value); D&L Consulting, Inc. (valued: $11,000 fair market value); and the HFLP assets (valued: $6,611,000 "fair market value" or $7,409,000 "fair value"). Husband was also awarded any refund from the parties' 2015 taxes, or he would have to pay taxes if any were owed.
¶ 23 In the Motion, Wife did not challenge the entirety of the PSA, but instead proffered the following specific bases in contending the PSA was unfair:
1) Husband received more than two times the value of assets than was received by Wife in the Property Settlement; 2) Husband was in possession and control over all of the business interests, business accounts, and access to all of the financial information of the parties historically prior to the filing of the Petition for the Dissolution of Marriage, and exclusive possession and control during the divorce litigation; 3) Husband failed to disclose to Wife financial information necessary for her to make appropriate decisions as to whether the division of income tax liability or refunds for year 2015 was appropriate; 4) one of the major assets of the parties, certain real estate located on McDonald Drive, in Paradise Valley, Arizona, was not properly valued nor accounted for at the time the parties entered into a settlement agreement; 5) Husband failed to disclose that he had not property [sic] managed one of the investment accounts awarded to Wife in the Property Settlement Agreement and *809 Wife subsequently learned the value given by Husband for the asset during settlement negotiations was grossly inflated.[8 ]
¶ 24 In responding to the Motion, Husband noted that Wife also had "exclusive possession and control of over 10,000 pages of business account record and financial information of the parties," until she turned them over; that Wife "had access to view accounts and other financial information;" and that Wife was aware that Husband was making estimated tax payments.
¶ 25 Husband further stated he made "significant" disclosures to Wife long before mediation, including, but not limited to
Charles Schwab account statements, business financial statements, personal financial statement, credit card statements, property deeds and titles, HFLP ownership ledger, HUD purchase statements, and many of the same financial and tax documents disclosed by Petitioner.
Husband noted that Wife, having held the Charles Schwab account for years, had been aware that the account included "imbedded capital gains" which resulted in a reduction in the awarded value of the account. He contended he had consistently asserted that each party had their own separate property interest in HFLP. Husband also suggested it would be inappropriate, in the trial court's determination of whether the PSA was fair, for it to consider fluctuations in the value of HFLP based on market conditions. Because Wife did not file a reply to Husband's response, she failed to contest his responsive contentions.
¶ 26 In substantively reviewing the trial court's fairness determination, we consider the language of section 25-317(B) and Sharp . Section 25-317(B) provides:
In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement ... are binding on the court unless it finds , after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, the separation agreement is unfair .
(Emphasis added.)
¶ 27 Sharp involved claims of duress, coercion, and undue influence, as the wife there contended her husband pressured her to sign a property settlement agreement without her consulting her attorney. 179 Ariz. at 209, 877 P.2d at 308. In terms of law, Sharp indicates a court is required to undertake an independent determination as to whether the distribution of property in an agreement is fair and equitable where a case involves "plainly disputed facts on the question of the fairness of the agreement, and the court was presented no evidence as to the extent of the community assets." Id. at 210, 877 P.2d at 309. The court noted that although the dissolution decree stated the parties' agreements were not unfair, neither the decree nor the trial court's dispositive minute entry contained "any basis" on which the trial court could have determined the agreement was not unfair, and there was "no evidence in the record on which such a conclusion could be based." Id.
¶ 28 Given those considerations, this court concluded that the trial court failed to perform its independent duty, pursuant to section 25-317(B), "to ensure that any separation and property settlement agreement reached by the parties is fair and equitable." Id. at 211, 877 P.2d at 310. Accordingly, this court remanded the matter "for further proceedings" for the trial court to make the requisite determination. Id.
¶ 29 Sharp did not state that under section 25-317(B) the trial court must conduct a hearing in order to independently resolve the issue of a fair and equitable division of property. See id . at 210-11, 877 P.2d at 309-10. Nor does anything in the section's language imply a hearing requirement. See generally A.R.S. § 25-317. We thus refuse to assign such a requirement as part of the trial court's duty to assess the fairness of a separation agreement, in all cases, or in the immediate case. Accordingly, we conclude the trial court did not err in failing to conduct a hearing. Further, the trial court made an *810 independent determination regarding whether the instant PSA was fair and equitable, and we find that determination was firmly within the bounds of reason.
¶ 30 We consider that the record before the trial court, in reviewing the PSA, contained, among other things: the agreement's notation that the parties had compromised regarding any dispute as to the nature of their interest in HFLP; the parties' pretrial statements; the Motion and Husband's response; the Kotzin valuations of the various assets-including whether these assets were separate property or community interests; Wife's counsel's communication to Husband's counsel suggesting Husband had not provided Kotzin with sufficient information for valuation purposes, and asserting Wife's allegations that she believed Husband had withdrawn funds from the Charles Schwab account to overpay 2015 taxes; Husband's communications with Kotzin, prior to mediation, answering Kotzin's questions, providing documents, and confirming whether additional information was needed; Husband's counsel's communication with Wife's counsel addressing Wife's valuation contentions, and reminding that during the mediation, even though Husband had disagreed with the Kotzin valuation of HFLP, Husband continued the mediation in good faith rather than seeking a second opinion, and that Wife had "refused to accept equal responsibility for any potential 2015 tax liability and agreed that in exchange for [Husband] accepting the same he would also be entitled to any overpayment of the taxes[;]" and the 2013 valuation pertaining to HFLP.
¶ 31 With this record, in determining the PSA was fair[9] and declining to set it aside, "in whole or in part[,]" and in deciding to sign the Decree and deny the Motion, the court made the following findings:
Wife either had full knowledge of or at the very least had full access to the financial information she now says supports her claim that the Agreement is unfair. Both parties negotiated off of a set of assumptions that were subject to interpretation. Wife took the risk that Kotzin valuation could be high or low, or that there would be a 2015 tax refund. Her allegation that she "believes" Husband withdrew money to deliberately overpay taxes is supported by no facts and no documents.
This Agreement was carefully negotiated and created an equitable division of the parties' assets.
¶ 32 Unlike in Sharp , we cannot say the trial court had no basis or evidence in the record to support its decisions. Moreover, without a finding of unfairness, the PSA was "binding on the court." A.R.S. § 25-317(B).[10] Accordingly, we affirm the trial court's decisions denying the Motion and signing the Decree, that included the PSA, to which both parties agreed, in writing, with the advice of counsel.
II. Attorneys' Fees and Costs Pursuant to A.R.S. Section 25-324
¶ 33 Both parties request an award of attorneys' fees and costs incurred in this appeal pursuant to A.R.S. section 25-324 (2018). The statute permits a court to order one party in a dissolution of marriage action to pay the reasonable costs and fees of the other upon considering the financial resources of both parties, and the reasonableness of their positions throughout the proceedings. See id. at § 25-324(A). We decline to award fees to either party.
CONCLUSION
¶ 34 For the foregoing reasons, and having found Wife has not shown the trial court abused its discretion, we affirm the trial court's decisions.

We cite to the current version of a statute unless the statute was amended after the pertinent events and such amendment would affect the result of this appeal.

HFLP is engaged in buying, renovating, and reselling residential and commercial properties. It primarily functions as a holding enterprise under which it manages its assets.

The Kotzin evaluation appears to have deemed a Mary J. Hoenshied Revocable Trust to be a business entity.

ARFLP 69(A)(1) presumes the validity of an agreement, and provides that "[a]n Agreement between the parties shall be valid and binding if ... the agreement is in writing...." The trial court nonetheless retains jurisdiction to reject the parties' agreement pursuant to A.R.S. § 25-317(B). ARFLP 69(B).

The current and applicable version of section 25-317(B) uses the term fairness, and does not use the term equitable. We acknowledge the term equitable requires fairness, but "not necessarily equal" allocation of property. Black's Law Dictionary 713 (8th ed. 2004).

The PSA also awarded several vehicles to the parties' adult children.

Husband noted an additional equalizing payment over six months (valued: $4,050 per month, or $24,300), not identified in the PSA.

The record indicates Wife is referring to the Charles Schwab Investment Account.

In ruling on the substance of the Motion and in reviewing the PSA, the trial court noted it applied the principles set forth in section 25-317(B) and Sharp .

See also at § 25-317(F) (stating "entry of the decree shall thereafter preclude the modification of the terms of the decree and the property settlement agreement, if any, set forth or incorporated by reference").