NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

ROSE ANN PRESCOTT, *Petitioner/Appellant*,

*v.*

ROBERT LINCOLN PRESCOTT, *Respondent/Appellee*.

No. 1 CA-CV 20-0393 FC
FILED 4-7-2022

Appeal from the Superior Court in Maricopa County
No. FN2018-001797
The Honorable Justin Beresky, Judge

**REVERSED AND REMANDED WITH INSTRUCTIONS IN PART;
AFFIRMED IN PART**

COUNSEL

Alexander R. Arpad Attorney at Law, Phoenix
By Alexander R. Arpad
*Co-Counsel for Petitioner/Appellant*

Joe M. Romley P.C., Phoenix
By Joe M. Romley
*Co-Counsel for Petitioner/Appellant*

Fennemore Craig, P.C., Phoenix
By Timothy Berg, Emily Ward
*Co-Counsel for Respondent/Appellee*

Rowley Chapman & Barney, LTD., Mesa
By Joshua R. Boyle
*Co-Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**		Rose Ann Prescott ("Wife") appeals from the superior court's orders incorporating the parties' Arizona Rule of Family Law Procedure 69 Agreement (the "Agreement") into the decree of dissolution without first conducting an evidentiary hearing to determine whether the Agreement was fair. For the following reasons, we reverse and remand, in part, with instructions for the superior court to hold an evidentiary hearing to determine the substantive fairness of the Agreement, but otherwise affirm the remainder of the decree.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**		In May 2018, Wife petitioned for dissolution of her 27-year marriage to Robert Lincoln Prescott ("Husband"). The marital community's primary asset is Cyrus Strong Investment Co., LLC ("Cyrus Strong"), a holding company that owns a 70 percent interest in another company, M.C. Davis Co., LLC, which owns Spin Magnetics, Inc. (collectively, the "community business"). In 2001, Wife started working for the community business in various capacities. In June 2017, she began working from home part-time performing administrative duties, earning $80,000 annually, until May 2018, when Husband terminated her employment.

**¶3**		Before the temporary orders hearing, Husband agreed to pay all expenses related to the marital residence where Wife lived; Wife's car, life, and health insurance; the minimum payments on the community credit cards; and the parties' estimated income taxes. After a hearing, the superior court awarded Wife temporary spousal maintenance of $4,000 per month

2

in addition to Husband continuing to pay most of the expenses related to the marital residence and Wife's car and health insurance.

¶4 The parties went to mediation in December 2019, where they reached an Agreement that was reduced to writing and signed by both parties in accordance with Rule 69. As relevant to the appeal, the parties agreed that Husband would buy out Wife's interest in the community business. As payment for Wife's interest, she would receive the profits from the sale of a commercial property in Florida owned by the community business (estimated to be $950,000, less her share of any capital gains tax owed) and a $107,000 equalization payment from Husband. The parties also agreed to (1) sell the marital residence with Husband paying all expenses related to the residence, subject to reimbursement upon the sale of the house; (2) split the remaining sales proceeds equally, with Husband using his share to pay the equalization payment; (3) equally divide the community portion of the retirement assets; and (4) equally divide "the funds in the MCP account SOS ending in 2969." The Agreement also assigned various other bank accounts to each party. The Agreement did not assign a value to any of these assets, other than the estimated value of the commercial property. The parties each received various vehicles of unspecified values. Wife waived her right to spousal maintenance. And the parties agreed to amend their previously filed 2017 and 2018 federal and state income taxes to file jointly and to share equally in any tax refunds. The parties also agreed to file jointly in 2019 and to share equally in any tax liability.

¶5 After Husband lodged the Agreement, Wife moved the superior court to determine its enforceability, arguing the court had an independent obligation under A.R.S. § 25-317(B) to determine if the Agreement was fair. Wife argued the court could not make that determination based upon the Agreement itself because it awarded the community business to Husband without stating its value. Wife argued she was to receive approximately $1 million for her share of the community business, but the business valuation report found the fair market value was between $3,428,000 and $4,088,000 as of September 17, 2019, and there was no reason to discount her interest. According to Wife, the waiver of spousal maintenance was also unfair because she qualified for support under § 25-319(A) and was entitled to an award of $6,000 a month based on the factors in § 25-319(B). Finally, Wife argued that requiring her to file joint tax returns for 2017, 2018, and 2019 was unfair because she may be liable for substantial taxes, interest, and penalties as a result of Husband's questionable conduct.

**¶6**        Husband countered that Wife could not challenge the Agreement because she entered it freely and on the advice of counsel. He also argued the division of assets need not be exactly equal to be fair. Husband argued that Wife voluntarily waived spousal maintenance and, in any event, would receive nearly $2 million in liquid assets, not including her share of his pension, which was sufficient to provide for her needs. As for the tax returns, Wife had counsel to advise her of the legal requirements for filing, so any misunderstanding of the mediator's statements was not grounds for rejecting the Agreement.

**¶7**        Without holding an evidentiary hearing, the superior court found the Agreement complied with Rule 69 and was presumed valid because Wife failed to show any defect or show that the less than equal division of assets was unfair. The court adopted the Agreement and signed a decree incorporating it. Wife timely appealed.[1] We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1)-(2).

## DISCUSSION

**¶8**        Wife argues the superior court erred by adopting the Agreement without conducting an evidentiary hearing to determine whether the division of the community business was substantively fair. We review the superior court's property allocation and spousal maintenance award for an abuse of discretion. *Hutki v. Hutki*, 244 Ariz. 39, 42, ¶ 14 (App. 2018); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998). The enforceability of a settlement agreement is a mixed question of law and fact, which we review de novo. *Buckholtz v. Buckholtz*, 246 Ariz. 126, 129, ¶ 10 (App. 2019). Wife also contends the denial of an evidentiary hearing deprived her of due process. We review due process claims de novo. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999).

**¶9**        Parties may enter into a settlement agreement to resolve property allocation and spousal maintenance in a dissolution proceeding. A.R.S. § 25-317(A). The terms of an agreement are binding on the court "unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unfair."

---

[1] The decree did not include Rule 78(c) language, but the superior court later entered a *nunc pro tunc* order amending the decree to include a certification of finality under Rule 78(c). Wife filed an amended notice of appeal from that order.

A.R.S. § 25-317(B); *see also Buckholtz*, 246 Ariz. at 128, ¶ 1. Courts are not required to conduct a hearing to determine if the agreement is fair if it is possible to make that determination based on the agreement itself or from the record. *Hutki*, 244 Ariz. at 44-45, ¶¶ 29-31. However, the court must hold a hearing when there are "plainly disputed facts on the question of the fairness of the agreement, and the court was presented [with] no evidence as to the extent of the community assets." *Sharp v. Sharp*, 179 Ariz. 205, 210 (App. 1994).

**¶10**        Husband contends the superior court properly approved the Agreement without a fairness hearing because Wife failed to present evidence of a factual dispute. He argues that Wife cannot create a factual dispute that would warrant a fairness hearing based on mere assertions. Husband cites *Chalmers v. Chalmers*, 1 CA-CV 18-0287 FC, 2019 WL 2651064, *4, ¶ 21 (Ariz. App. June 27, 2019),[2] where the husband argued the parties' settlement agreement unfairly awarded part of his separate property to the wife and failed to address her alleged waste. This court held the superior court was not required to hold a fairness hearing because the husband failed to provide evidence that he actually had any separate property and offered no evidence of waste. *Id. Chalmers* also concluded that no hearing was required because "the Agreement itself contained ample evidence from which the [superior] court could find it fair and equitable." *Id.* at ¶ 22. Thus, we must consider whether the Agreement and the record here contained sufficient information for the superior court to determine that the admittedly unequal property allocation was not unfair.

I.      Community Business

**¶11**        On appeal, Husband contends the superior court properly found the allocation of the community business was fair because the parties agreed the value of the community business was $2 million, or $1.4 million given Cyrus Strong's seventy-percent interest. The Agreement contains no such statement. The Agreement awards Wife approximately $1 million for her share of the community business but does not state the total value of the community business or state what method of valuation was used to determine the $1 million payment for Wife's share. Husband acknowledged that an unequal allocation might be fair because Wife received liquid assets and he was awarded the community business itself,

---

[2] Pursuant to Arizona Supreme Court Rule 111(c)(1)(C), memorandum decisions issued after January 1, 2015, may be cited "for persuasive value" if no published opinion adequately addresses the issue and if it is not a depublished opinion.

which had inherent risks. This suggests the community business might have actually been valued at more than $2 million but reduced based on the risk Husband assumed. However, Wife argued there was no valid reason to discount the fair market value stated in the business valuation report because the business valuation relied on an asset valuation and did not value the community business' profitability on a going concern value.

**¶12** Given that the parties disputed the total value of the community business, and neither the record nor the Agreement provide evidence of the value of the community business upon which the court could rely to determine that the Agreement was not unfair, this case is distinguishable from *Hutki*, 244 Ariz. at 45, ¶¶ 30-32, and *Chalmers*, 1 CA-CV 18-0287 FC, at *4, ¶ 22. In *Hutki*, 244 Ariz. at 45, ¶¶ 30-32, the record contained other evidence from which the court could determine the agreement was fair. Similarly, *Chalmers*, 1 CA-CV 18-0287 FC, at *4, ¶ 22, referred to "ample evidence" in the agreement itself showing it was fair. Conversely, the Agreement here does not state that the parties agreed to compromise any dispute regarding the nature of their interest in the community business, nor were there pretrial statements or other evidence in the record showing the value of the community business interests.

**¶13** Admittedly, Wife did not attach the business valuation report to her motion in support of her claim that allocation of the community business was unfair. But because the pleadings contained "plainly disputed" explanations for the business valuation report and resulting allocation, the superior court necessarily had to weigh the parties' opposing assertions and make credibility determinations to reach the conclusion that the Agreement was not so unfair as to require the court to reject it. *See Sharp*, 179 Ariz. at 210. Thus, a hearing was necessary.

**¶14** To decide this question without taking evidence is also inconsistent with due process. "[D]ue process requires the court to allow parties a reasonable opportunity to present testimony whenever resolution of a material contested issue hinges on credibility." *Volk v. Brame*, 235 Ariz. 462, 466, ¶ 14 (App. 2014). Husband contends that Wife was afforded an opportunity to be heard through her written objections to the Agreement. However, the court cannot assess credibility on documents alone. *Id.* at 464, ¶ 2. As explained in *Volk*, when factual disputes exist, "the court must afford the parties an opportunity to present sworn oral testimony, and may not rely solely on avowals of counsel." *Id.* at ¶ 1.

II.  Spousal Maintenance

¶15  Regarding spousal maintenance, Husband contends no hearing was necessary because he did not dispute the facts in Wife's motion and because sufficient evidence existed in the record to support the finding that Wife's waiver of spousal maintenance was not unfair.

¶16  In ordering temporary spousal maintenance, the superior court found that Wife was of an age that may preclude her from earning sufficient income to support herself. *See* A.R.S. § 25-319(A)(4). Thus, the record shows that Wife qualified for spousal maintenance. But Husband contends Wife received sufficient property under the Agreement to support herself; thus, the waiver of spousal maintenance was not unfair. *See* A.R.S. § 25-319(B)(9) (in determining the amount and duration of maintenance, courts shall consider the financial resources awarded to the party seeking support).

¶17  To determine that the waiver of spousal maintenance was not unfair, the superior court had to consider, *inter alia*, whether Wife received sufficient property to provide for her reasonable needs for her lifetime. *See* A.R.S. § 25-319(B)(9); *compare In re Marriage of Cotter & Podhorez*, 245 Ariz. 82, 86, ¶ 10 (App. 2018) (for purposes of § 25-319(A)(1), "sufficient property means property that, standing alone, can provide for a spouse's reasonable needs during his or her lifetime"). The Agreement awarded both parties multiple vehicles; equally divided the proceeds from the sale of the marital residence, the community portion of the retirement assets, and the MCP account ending in 2969; and awarded other bank accounts to either Husband or Wife. But the Agreement did not set forth the value of these assets. Without assigning a corresponding value to the assets, the court could not determine how much property Wife would ultimately receive.

¶18  Although Husband claims Wife received $2 million in assets, nothing in the Agreement or the record supports this assertion. The exhibits at the temporary orders hearing show the value of some bank accounts but not all, and there is little information in the record as to the equity in the marital residence. Furthermore, even if Wife was to receive approximately $1 million for her interest in the community business, she had to pay half of any capital gains taxes due on the sale proceeds from the Florida property and purchase another residence. And although the court could consider both the principal and interest of the retirement accounts in determining the sufficiency of Wife's property because Wife was 62 years old and eligible to withdraw from the retirement accounts without penalty,

*see* 26 U.S.C. § 72(t)(2)(A)(i), nothing in the record or the Agreement showed how much she could expect to receive.

**¶19** Additionally, the parties' financial affidavits, contained in the record, showed a vast disparity in income. *See* A.R.S. § 25-319(B)(5) (court shall consider the parties' comparative financial resources in determining amount and duration of support award). The record also contains evidence of the parties' lengthy marriage, Wife's age, and high-school education. Each factor supports Wife's claim that the waiver of spousal maintenance was unfair. *See* A.R.S. § 25-319(B)(2), (3), (10) (in determining amount and duration of support award, the court shall consider the duration of the marriage, age, and the time needed to acquire sufficient training or education for the party seeking support to find appropriate employment). Given that these factors weigh in favor of awarding at least some spousal maintenance, there was a plainly disputed factual issue as to the fairness of Wife's waiver of spousal maintenance that warranted a hearing.

III.    Joint Income Tax Returns

**¶20** Wife also argues it was unfair to require her to sign joint tax returns from 2017, 2018, and 2019. As for tax years 2018 and 2019, Wife asserted it was unfair to hold her liable for one-half of the joint income tax liability because she did not receive one-half of the income in those years. Wife's employment terminated in May 2018, and in October 2018, she began receiving $4,000 per month in temporary spousal maintenance while Husband also paid Wife's car and health insurance and expenses related to the marital residence each month. Husband, on the other hand, earned over $30,000 a month according to his 2018 financial affidavit. In 2019, Wife received the same $4,000 in monthly spousal maintenance plus Husband continued to pay Wife's car and health insurance, as well as the majority of expenses for the marital residence. Yet under the Agreement, Wife was obligated to pay one-half of the estimated $95,000 income tax liability for 2019. Because there was no explanation for this seemingly unfair tax burden, the court was required to conduct a hearing to determine whether the provision that Wife was equally liable for the parties' joint income in 2018 and 2019 was unfair.

**¶21** Because the parties were still married and living together in 2017, presumably Wife received the benefit of the parties' joint income that year. Nothing in the record or Agreement shows that it was unfair to require Wife to file jointly for tax year 2017.

**¶22** Wife also argued she might face financial and criminal liability and penalties if she was required to sign joint returns. These claims are speculative and not supported by anything in the record. In contrast, the record sufficiently demonstrated a genuine factual dispute as to the fairness of the property allocation, spousal maintenance waiver, and the 2018 and 2019 tax return provisions. The court did not abuse its discretion by adopting the provision in the Agreement requiring Wife to sign joint tax returns for tax year 2017.

IV.     Attorneys' Fees

**¶23** Wife requests an award of her attorneys' fees and costs on appeal based on Husband's superior financial resources. *See* A.R.S. § 25-324(A). Without setting forth a factual basis, Husband requests an award of fees under A.R.S. §§ 25-324 or 12-341.01. After considering the financial resources and the reasonableness of the parties' positions, we grant Wife's request for attorneys' fees upon compliance with Arizona Rule of Civil Appellate Procedure 21. As the prevailing party, Wife is also awarded her costs on appeal. *See* A.R.S. § 12-342.

## CONCLUSION[3]

**¶24** The superior court erred by entering a decree that adopted the parties' Rule 69 Agreement without first granting Wife's request for a hearing to determine the fairness of the Agreement. Accordingly, we remand with instructions for the court to conduct a fairness hearing on the Agreement as a whole (because there is no severability clause contained within the Agreement). We affirm the decree in all other respects.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[3] This court recently received an inquiry from one of the parties regarding the status of this matter. With the issuance of this decision, the court takes no further action on the inquiry.